A97A2298. HICKS v. THE STATE.
(499 SE2d 341)

BIRDSONG, Presiding Judge.

Pursuant to our grant of an interlocutory appeal, Brett Ferrell Hicks appeals the trial court's denial of his motion to enforce the assignment of his case to the superior court judge to which the case was assigned originally. Stated directly, Hicks attacks the practice in Cobb County of assigning cases brought by the Marietta, Smyrna, Cobb Drug Task Force ("MCS"), regardless of the case assignment to a particular Cobb Superior Court Judge under Uniform Superior

---

[9] See *Cunningham v. Tara State Bank*, 212 Ga. App. 470, 471 (442 SE2d 18) (1994).

Court Rule 3.1, to the Chief Judge of the Cobb Magistrate Court ("the Chief Magistrate") for disposition. *Held*:

1. The State has not attempted to defend the procedures used to assign this case to the Chief Magistrate. Instead, the State relies solely upon the argument that Hicks has waived the issue because he did not raise it until after the Chief Magistrate rejected a negotiated plea agreement. Although the timing of Hicks' motion raises questions about his motivation, we do not find that Hicks waived this issue by not raising it when he first appeared before the Chief Magistrate. In our earlier cases considering this issue we found a waiver because the appellants did not raise the issue until after their trials had been completed. See, e.g., *Bennett v. Jones*, 218 Ga. App. 714, 715 (463 SE2d 158) (physical precedent). In this case, however, the *jurisdiction* of the Chief Magistrate to preside at the trial was raised before trial on the merits commenced and Hicks did not wait to raise the issue until after trial was completed. Therefore, we conclude that this issue is properly before us. See *Troncone v. Troncone*, 261 Ga. 662, 663 (409 SE2d 516); *Bennett v. Jones*, 218 Ga. App. 714, 715 (463 SE2d 158).

2. In response to Hicks' challenge to the participation of the Chief Magistrate in this case, the assigned prosecutor stated that it was his understanding that, "all the cases of MCS agents that are — or cases investigated by MCS agents ought to go to [the Chief Magistrate]. That's not really true. See, because, Your Honor, cases involving the organized crime unit or the OCU Unit of the Cobb County Police Department, as well as the members of the other jurisdictions that are part of these organized crime units, their cases, likewise, are assigned to [the Chief Magistrate]." Further, even though the prosecutor agreed that an order providing jurisdiction to the Chief Magistrate should exist, neither the prosecutor nor the trial court, nor apparently the clerk or the administrator of the superior court could locate a court order assigning this case or any MCS case to the Chief Magistrate.

Instead, according to the prosecutor, when warrants taken out by an MCS agent or an organized crime unit agent come in to the district attorney's office, the cases are assigned to the district attorney's MCS unit. "And those cases are then assigned, regardless of the superior court judge that they are assigned to, they are then diverted to [the Chief Magistrate]." The prosecutor did not indicate what office assigned these cases to the Chief Magistrate, and the prosecutor could not state exactly how the cases are assigned to the Chief Magistrate.

The record contains a copy of a letter to the Chief Judge of the Cobb Superior Court, apparently signed by all the other superior court judges, that was filed on October 16, 1996, but apparently

dated September 13, 1996, requesting the assistance of the Chief Magistrate in handling the business of the court from Monday, December 2, 1996, at 9:00 a.m. and continuing through and including Sunday, December 8, 1996, at 5:00 p.m. or until such time as is reasonably necessary to complete said cases. Also in the record is a request for judicial assistance pursuant to OCGA § 15-1-9.1, dated October 16, 1996, stating that the judges of this court are in need of assistance in handling the business of this court and requesting the Chief Magistrate for the period stated in the letter. The record contains similar letters and requests for assistance, dated November 29, 1996, for January 13 to January 19, 1997, dated November 13, 1996, for January 27 to February 2, 1997; and dated December 3, 1996, for February 24 to March 2, 1997. The record also contains the Chief Magistrate's acceptance of designation for most of the periods.

OCGA § 15-1-9.1, requesting judicial assistance from other courts, controls requests for assistance in this circumstance and the Code section, in pertinent part, states: "If assistance is needed from a judge from the same county, the chief judge of any court within such county of this state may make a written request for assistance to the chief judge of any other court within such county. . . . The request by the chief judge may be made if one of the following circumstances arises: (A) A judge of the requesting court is disqualified for any cause from presiding in any matter pending before the court; (B) A judge of the requesting court is unable to preside because of disability, illness, or absence; or (C) A majority of the judges of the requesting court determines that the business of the court requires the temporary assistance of an additional judge or additional judges." Further, "[t]he written designation shall identify the court in need of assistance, the county where located, the time period covered, the specific case or cases for which assistance is sought if applicable, and the reason that assistance is needed. The written designation shall be filed and recorded on the minutes of the clerk of the court requesting assistance. Any amendment to the designation shall be written, filed, and recorded as is the original designation." Id.

Uniform Superior Court Rule 3, Assignment of cases and actions, also affects this issue. Rule 3.1, Method of assignment, provides: "In multi-judge circuits, unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. The clerk shall have no power or discretion in determining the judge to whom any case is assigned; the clerk's duties are ministerial only in this respect and his responsibility is to carry out the method of assignment established by the judges. The assignment system is designed to prevent any person's

choosing the judge to whom an action is to be assigned; all persons are directed to refrain from attempting to affect such assignment in any way. Neither the clerk nor any member of his staff shall disclose to any person the judge to whom a case is or will be assigned until such time as the case is in fact filed and assigned." If the Cobb County Superior Court has adopted .any modification to Uniform Superior Court Rule 3.1 for MCS cases, or any other kind of cases, the modification does not appear in the record and neither party to the appeal has cited to such modification.

Further, Rule 3.3, Exclusive control, provides that "[t]he judge to whom any action is assigned shall have exclusive control of such action, except as provided in these rules, and no person shall change any assignment except by order of the judge affected and as provided in these rules. In this regard an assigned judge may transfer an assigned action to another judge with the latter's consent in which event the latter becomes the assigned judge."

Therefore, under Uniform Superior Court Rules 3.1 and 3.3, no one, other than the superior court judge to which this case was assigned, had authority to change the assignment of this case to the Chief Magistrate, and, in any case, an order assigning this case to the Chief Magistrate was required. Absent such an order, the Chief Magistrate had no authority to act in this matter even though in denying Hicks' motion, the trial court found that "[c]ertain matters in this case were heard by [the Chief Magistrate] pursuant to requests for judicial assistance from the judges of the Cobb Superior Court," and then concluded as a matter of law that "the procedure leading to the assistance provided by [the Chief Magistrate] meets the requirements of Code Section 15-1-9.1 and, further, finds that this case was never assigned to [the Chief Magistrate]."

We find that the procedures used in this case violate both Uniform Superior Court Rules 3.1 and 3.3 and OCGA § 15-1-9.1. A proper written and filed request for assistance under OCGA § 15-1-9.1 is an indispensable prerequisite to clothe the designated judge with jurisdiction and power to act. *Hornsby v. Odum*, 198 Ga. App. 472, 473 (402 SE2d 56). Thus, as the designation in this case did not identify the Hicks' case as one for which the assistance of the Chief Magistrate was sought, we do not find that the designated judge had jurisdiction and power to act because Uniform Superior Court Rules 3.1 and 3.3 require a specific order from the assigned judge to transfer responsibility to an assisting judge even if an assisting judge has been properly designated in accordance with OCGA § 15-1-9.1. We are particularly concerned by the suggestion that someone in the District Attorney's office is making the decision to direct these cases to the Chief Magistrate. This does not mean, however, that responsibility for this case cannot in the future be transferred to an assisting

judge if the procedures established in both Uniform Superior Court Rule 3 and OCGA § 15-1-9.1 are satisfied.

Additionally, we find that the requests for assistance from the Chief Magistrate did not comply with OCGA § 15-1-9.1. In *Dominguez v. Enterprise Leasing Co.*, 197 Ga. App. 664, 665 (399 SE2d 269), this Court observed, "seemingly any provision that might prevent such interjudicial appointments from supplying the judiciary of this state, can be avoided as often and as lengthily as requesting court judges might wish, simply by making these requests for assistance. This unreigned method of administrating the judicial business of a court, and its disaffection of the electors or of parties proceeding in the court, do not seem to be a sagacious result of the desire for judicial 'flexibility.' "

Further, our Supreme Court found that "[b]y failing to specify either the scope or length of the assisting judge's service, his order of appointment violated the standards required to obtain temporary judicial assistance" outlined in OCGA § 15-1-9.1 and court rules. *Cramer v. Spalding County*, 261 Ga. 570, 573 (409 SE2d 30). Further, in *Bennett v. Jones*, supra at 715, this Court strongly admonished "superior court judges requesting assistance to be careful about how they word their OCGA § 15-1-9.1 orders, as well as how they utilize those appointed to sit as superior court judges under that statute. See *Cramer v. Spalding County*, [supra at 570 (3) (a)]." As neither the requests nor the designations specified the scope of the assisting judge's service, we find that this case was not properly assigned to the Chief Magistrate.

Additionally, "[a] judge does not have statutory or inherent authority to create a judicial office and make indefinite appointments thereto. *Cramer v. Spalding County*, [supra]. OCGA § 15-1-9.1 (b) (2) authorizes the judiciary to request judicial assistance from other Georgia courts when, among other things, the requesting court requires the temporary assistance of an additional judge or judges. The order designating a specified, qualified judge to assist a requesting court must contain the time period of the assistance and must be filed and recorded on the minutes of the clerk of the court requesting the assistance. OCGA § 15-1-9.1 (f)." *Massey v. State*, 265 Ga. 632, 634-635 (458 SE2d 818). In the present appeal the limited record suggests that the requests for assistance were not temporary. "Temporary assistance" means assistance for a limited time and our Supreme Court has held that the term does not mean an indefinite appointment of a judge (*Cramer v. Spalding County*, supra at 573) and Justice Fletcher would interpret " 'temporary assistance' to also prohibit a succession of assignment orders that, taken together, amounts to an indefinite appointment." *Massey v. State*, supra at 636-637 (special concurrence). We need not reach this issue to decide

this case, however, and, therefore, do not decide whether the requests in this case were truly requests for temporary assistance. Nevertheless, we are constrained to express our concern about the prosecutor's comments that suggest that OCGA § 15-1-9.1 is being used to create a special drug court and that cases are being assigned to that court in violation of Uniform Superior Court Rules 3.1 and 3.3.

Accordingly, as we find that the Chief Magistrate lacked authority to act in this case, the order of the assigned judge must be reversed and the case remanded to the assigned judge for further proceedings.

*Judgment reversed. Ruffin and Eldridge, JJ., concur.*

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DENIED MARCH 25, 1998 ▮

*Jackel, Rainey, Marsh & Busch, James L. Rainey, Kimberly S. Blackwell*, for appellant.

*Thomas J. Charron, District Attorney, Irvan A. Pearlberg, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.

