## A00A1958. CULLIVER v. THE STATE.
(545 SE2d 392)

MILLER, Judge.

Eric Culliver was convicted of enticing a child for indecent purposes[1] and of child molestation.[2] He enumerates three errors: (1) the case was called "out of order" and placed at the first of the trial calendar; (2) the judge who tried the case was not originally assigned the case; and (3) the court did not declare a mistrial when a witness gave testimony that had been ordered excluded. Since the case was called and a new judge assigned in compliance with a plan approved by the judges in the local circuit, the first two enumerations fail. And since the testimony in question was not unduly prejudicial, the trial court did not abuse its discretion in refusing to declare a mistrial. We affirm.

Construed in favor of the verdicts, the evidence showed that while at a mall Culliver approached two young girls (a twelve-year-old and a thirteen-year-old) and asked if they would play arcade games with his four-year-old son. They consented, but when the foursome met at the arcade center in the mall, Culliver requested that the 13-year-old play a racing game with his son while the 12-year-old show him how to play a videogame in the back corner of the center. Once in the back corner, he insisted that the 12-year-old stand in front of the videogame (instead of to the side where her controls were), and he then stood behind her with his arms around her as she and he played the game. He rubbed his erect private part against her back during the game.

Once the game ended, he retrieved his son and disappeared into the mall, while the upset 12-year-old cried and, taking her 13-year-old friend outside, disclosed the event to her. The victim then went home, only to return soon with her parents who had called police when she told them of the incident. Questioned some days later, Culliver initially denied and then admitted that he had talked to the girls, that he had played a game with the 12-year-old in the arcade center, that the victim had "bumped up against him and he became erect," that he had not planned to molest anyone but that it had "just happened," and that he was sick and needed help.

Culliver was charged with enticement and child molestation. He was also charged with false imprisonment based on the victim's statement that once she realized that he was rubbing his erect private part against her, she tried to escape, but he held her wrists and ordered her to complete the game.

Culliver filed a demand for a speedy trial. Toward the end of the

[1] OCGA § 16-6-5 (a).
[2] OCGA § 16-6-4 (a).

last term in which he could be tried, he appeared for trial before Judge Altman, who ultimately declared a mistrial. Per an unwritten but well-understood policy approved by the judges of the local circuit, a mistried case is assigned to the next trial calendar in the term, over which calendar a different judge presides on a rotating basis. Under this policy, if the case has a speedy trial demand, it is placed at the top of that calendar. Culliver's case followed this policy. His trial before the second judge, Judge McLane, resulted in an acquittal on the false imprisonment charge and a hung jury on the other two counts, thus necessitating a second mistrial on those counts.

Judge McLane ordered that the case be set for the following week (the last trial week of the term[3]), again at the top of the calendar. That week the presiding judge (as per a calendar long published by the circuit court administrator) was Judge Horkan. In the trial before Judge Horkan, a jury found Culliver guilty of the enticement and molestation counts, which convictions are the subject of this appeal.

1. Citing *Cuzzort v. State*,[4] Culliver first contends that the State could not move the case to the top of Judge Horkan's calendar. But the State did not move the case; rather, Judge Horkan exercised his discretion under the approved local policy to move a "speedy trial demand" case to the top of the calendar. No rule prohibits a local policy moving a "speedy trial demand" case to the top of a calendar; in fact, such a policy is only common sense and designed to accommodate the demand of the accused. *Cuzzort* even emphasized that under OCGA § 17-8-1 "a trial judge may in his discretion call cases out of order. . . ."[5] The decision of the local judges to adopt a policy moving a "speedy trial demand" case to the top of the calendar is a wise and thoughtful exercise of that discretion.

2. Culliver's second enumeration of error concerns the local policy assigning a mistried case to the next available calendar, even though a different judge will preside over that calendar. He argues that this conflicts with the Uniform Superior Court Rules and with *Cuzzort*[6] and *Hicks v. State*.[7]

Rule 3.1 of the Uniform Superior Court Rules provides:

> In multi-judge circuits, *unless a majority of the judges in a circuit elect to adopt a different system*, all actions, civil and criminal, shall be assigned by the clerk of each superior

---

[3] See OCGA § 15-6-3 (35) (D).
[4] 271 Ga. 464, 465 (3) (519 SE2d 687) (1999).
[5] Id.
[6] Id. at 464-465 (1), (2).
[7] 231 Ga. App. 552, 553-557 (2) (499 SE2d 341) (1998).

court *according to a plan approved by such judges* to the end that each judge is allocated an equal number of cases. . . . The assignment system is designed to prevent any person's choosing the judge to whom an action is to be assigned. . . .[8]

Rule 3.2 directs that *when practical*, all substantially related cases and refiled cases shall be assigned to the same judge.[9] And Rule 3.3 states that the judge to whom a case is assigned may transfer the case to another judge with the latter's consent.

These rules permit the judges of a circuit to approve and follow a plan that assigns a mistried case to the next available calendar, even though this results in the case being assigned to a different judge. The local judges may elect to adopt a different assignment system from that suggested (so long as no party can choose the judge), and a judge may transfer a case to another judge with the latter's consent. Here, the transfers from Judge Altman to Judge McLane, and then from Judge McLane to Judge Horkan, were in effect consented-to and authorized transfers.

Nothing in *Cuzzort*[10] states otherwise. To the contrary, *Cuzzort* instructs:

Under the plain language of the rule, multi-judge circuits may adopt a different method subject to the approval of a majority of the circuit's judges. Certainly, judges, in their capacity as members of the judiciary, have the inherent authority to determine their own internal operating procedure for the selection of which of them shall hear cases.[11]

3. Culliver's third enumeration is that the trial court erred in denying his motion for mistrial. At the third trial Culliver moved in limine to exclude any testimony concerning Culliver seizing the victim's wrists and ordering her to finish the game. He argued that when the second jury acquitted him of the false imprisonment charge, the jury necessarily found that these alleged facts did not occur. He urged that the testimony was prejudicial and that he should not be placed in double jeopardy by having a new jury hear that testimony again.

---

[8] (Emphasis supplied.)

[9] See *Lumpkin v. Johnson*, 270 Ga. 392, 395 (2) (509 SE2d 621) (1998) (the "when practical" language means Rule 3.2 is not mandatory); accord *Tokars v. Superior Court of Cobb County*, 264 Ga. 180, 181 (442 SE2d 454) (1994).

[10] Supra, 271 Ga. at 464-465 (1).

[11] (Citations and punctuation omitted.) Id. at 464 (1). *Hicks*, supra, 231 Ga. App. at 554-556 (2), is distinguishable in that it focused on the failure of the judges to comply with OCGA § 15-1-9.1 when seeking assistance from other courts.

Although the court indicated that it did not perceive the testimony as unduly prejudicial, the court ordered the State to instruct its witnesses not to mention the grabbing of the victim's wrists. In recounting the victim's statements to him, however, a police officer mentioned the victim's statement that "when she tried to get away he grabbed her wrists and told her she had to finish the game." Culliver moved for a mistrial, which the court denied on the ground that the testimony was not so prejudicial as to warrant a mistrial.

The court was correct in granting the motion in limine to exclude the testimony, for it concerned factual issues resolved in Culliver's favor by the previous acquittal.[12] The State's argument that the testimony was admissible as part of the res gestae misses the mark, for the issue in the motion in limine was not whether the testimony was relevant or otherwise admissible, but whether admission was precluded as a matter of collateral estoppel.

The relevant inquiry then becomes whether the court erred in denying the motion for mistrial when the prohibited testimony was mentioned. Whether to grant a mistrial due to the mentioning of improper evidence is left to the sound discretion of the trial court, which we review only for abuse based on a "consideration of the nature of the statement, the other evidence introduced during the trial, and the action taken by the court and counsel concerning the impropriety."[13]

We discern no abuse here. Though not probative of any of the elements of the charged crimes, the single statement was part of the res gestae. The other evidence introduced during the trial showed that (1) Culliver admitted to playing a game with the victim, to bumping against the victim and becoming erect, to the molestation "just happen[ing]," and to being sick and needing help; (2) the victim was unequivocal in her testimony; (3) the victim immediately exhibited symptoms of being traumatized to observers; and (4) the victim immediately told her friend and parents of the incident and confirmed it to police. Strong evidence of guilt, as here, lessens the prejudicial impact of the improper evidence.[14] Finally, even though the court gave no curative instruction to the jury, State's counsel ensured that no other State witness referenced the excluded evidence. Under these circumstances the trial court did not abuse its discretion in denying the motion for mistrial.[15]

---

[12] See *Salcedo v. State*, 258 Ga. 870, 871 (376 SE2d 360) (1989); *Moore v. State*, 254 Ga. 674, 675-677 (333 SE2d 605) (1985).

[13] (Citations and punctuation omitted.) *Laster v. State*, 234 Ga. App. 16, 17 (2) (505 SE2d 560) (1998).

[14] *Martin v. State*, 240 Ga. App. 901, 903 (1) (525 SE2d 728) (1999).

[15] *Brown v. State*, 243 Ga. App. 632, 633 (2) (534 SE2d 98) (2000).

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 7, 2001.

*Ronald L. Beckstrom*, for appellant.
*J. David Miller, District Attorney, Laura E. Anderson, Assistant District Attorney*, for appellee.