### DIXON *v.* BRISTOL SAVINGS BANK *et al.*

1. An escrow obtained from the depositary by a fraud practiced upon him by the grantee who has not performed the conditions upon which delivery is to be made, the depositary being innocent of any wrong or bad faith, passes no title either to the grantee or to an innocent purchaser from the latter.

2. If, however, the grantor, after such improper delivery, ratifies the same, the delivery is effectual to pass title from the grantor. Whether or not in the present case there was ratification, as claimed, was a question which the judge ought to have submitted to the jury, instead of solving himself by granting a nonsuit.

3. "A grantor can not deliver a deed to a grantee, or his attorney, as an escrow. Such a delivery would be equivalent to adding a parol condition to the instrument. To make the deed an escrow, it should be delivered to a third person, to be by him delivered to the grantee upon the performance of any required condition." The agency implied in the above quoted language is an agency, in behalf of the grantee, to obtain possession of the instrument for the latter; because in a broad sense every depositary of an escrow is the agent of both parties. Whether in the present case the depositary was or was not the agent of the grantee named in the escrow, to procure its delivery from the maker, was also a question for the jury.

4. In view of the law laid down in the first headnote, the question of pos-

session in this case is immaterial, for the reason that the parties claiming under the grantee named in the escrow can not be protected unless either the grantor ratified its delivery, or the depositary was the grantee's agent to procure delivery.

Argued June 5, — Decided August 5, 1897.

Equitable petition.    Before Judge Lumpkin.    Fulton superior court.    September term, 1896.

*Alexander & Lambdin,* for plaintiff.
*Rosser & Carter* and *T. R. R. Cobb,* for defendants.

FISH, J.    Annie Dixon was the owner of a lot of land in the city of Atlanta.    A deed signed by her, dated February 24, 1891, and purporting to convey the land to F. C. Hitchens, was recorded March 2, 1891.    On March 16, 1891; Hitchens made a conveyance of the same land to the Bristol Savings Bank, as security for a loan of $2,000, and on the same day mortgaged the same property to one Barker to secure an indebtedness of $100.    This latter deed and mortgage were recorded on March 25, 1891.    On December 31, of the same year, Annie Dixon brought her petition against Hitchens, Barker, and the bank, alleging that the deed from her to Hitchens was procured by fraud and without consideration; that it was never in fact delivered by her to Hitchens or to any one for him, but was left as an escrow with a named depositary from whom Hitchens had, by fraud and without performance of the conditions of delivery, obtained it; that, until two or three weeks before the bringing of the suit, she did not know of the existence of the two liens created on the property by Hitchens; that they were a part of Hitchens's scheme to defraud her of her property; that the property, at the date of the deed to the bank and of the mortgage to Barker, was in possession of certain parties as her tenants.    She prayed for a cancellation of the deeds and of the mortgage, and for other appropriate relief.    Hitchens denied all allegations of fraud or improper dealing on his part, and insisted that the land had been bought by him from plaintiff and fully paid for.    The bank and Barker answered, that they had loaned to Hitchens the money represented by the deed and mortgage, in good faith and without notice or knowledge of any claim of plaintiff upon

the property; that their conduct had been blameless and without fraud; that they had no notice or knowledge that plaintiff was in possession of the land by tenants or otherwise, and were informed that she was not so in possession and had no claim to the property. On the trial, the plaintiff introduced evidence tending to prove, in substance, the following: Plaintiff purchased the property in question in 1877, and subsequently made valuable improvements upon it, she and her tenants being in possession. Hitchens, by false and fraudulent representations of impending litigation, sought to persuade her to put the title to the property temporarily in him. To this end he prepared a "note of obligation," "the substance of which was that he would restore the property to plaintiff upon the conclusion of the threatened litigation," as well as his promissory note for $2,700, and desired plaintiff to make him a deed to the property. Instead of following exactly this plan, plaintiff and Hitchens went to the office of an attorney, where Hitchens handed plaintiff the promissory note and she executed a deed conveying the property to Hitchens. This deed she delivered to the attorney with the express understanding and agreement of all three that he "should hold the deed until Hitchens *paid the money*." It was also understood between plaintiff and Hitchens that there was never to be any payment upon the note or any delivery of the deed. Plaintiff had agreed to go with Hitchens to Texas as his housekeeper, and within a day or two after the delivery of the deed to the attorney she was sent to New Orleans by Hitchens, he following three days later. Before leaving Atlanta, plaintiff instructed Hitchens to place her property in the hands of a renting-agent, which he did. One of her tenants was left in one of the houses upon the place. Between the time of plaintiff's arrival in New Orleans and the time when Hitchens joined her there, she received two letters, signed with the name of a friend of hers in Atlanta but in fact sent by Hitchens, falsely stating that there was trouble in regard to her property and that some of her furniture had been attached, and advising her to follow the advice of Hitchens in the matter. When Hitchens reached New Orleans, he took from plaintiff, by force and against her will,

the "note of obligation" and the promissory note and then returned to Atlanta.   Plaintiff followed him to Atlanta, and called upon the attorney with whom the deed had been deposited.   She asked where she could find Hitchens, and told of the theft of the papers.   The attorney said that he was very sorry, that Hitchens had "given him $5.00 as a fee if anything should come up," and that he could do nothing for her.   She found Hitchens, and he promised to return the stolen papers if she would go to New Orleans, and shortly afterward, in that city, he executed a paper and gave it to her together with her "title papers."   She could not read and did not know the nature of the paper Hitchens signed, but it looked like a deed and she was told, if she would record it, her property would be all right.   Subsequently, in Texas, when she at the instance of Hitchens put the papers in her trunk, the trunk was broken open and the papers stolen.   In August, 1891, plaintiff went to Danville, Va., where she remained until December, and then first learned that her property had been mortgaged.   She came directly to Atlanta and employed attorneys to protect her rights.   While in Texas she had received through Hitchens some of the rent due on her place, but nothing was ever 'paid her on the promissory note or as the purchase-money of the property.   The deeds from her vendor to herself, from her to Hitchens, from Hitchens to the Bristol Savings Bank, and the mortgage from Hitchens to Barker were introduced in evidence.   Also certain letters and telegrams.   At the close of the plaintiff's evidence, the trial judge awarded a nonsuit as to Barker and the bank, and to this ruling plaintiff excepted.

1.  "Although it is well settled that an escrow delivered without authority, or obtained fraudulently, passes no title to the grantee or obligee, there is some conflict of opinion as to the right of an innocent purchaser from a grantee who has obtained possession of the escrow without performing the conditions; but the better opinion seems to be, that such a purchaser acquires no title."   6 Am. & Eng. Enc. Law, 1st ed. 869.   See cases cited in n. 3.   "When the instrument has been placed in the hands of the depositary, the grantee is not entitled to it, nor does he acquire any rights under it, until he has performed

the conditions upon which the depositary is to deliver it to him." Devlin on Deeds, § 321. "Until the condition has been performed and the deed delivered over, the title does not pass, but remains in the grantor. . . If the depositary deliver the deed without authority to do so from the grantor, or if the grantee obtain possession of it fraudulently, without performing the condition, the deed is void. The deed thus obtained conveys no title either to the grantee or purchasers under him." Ib. § 322, and cases cited in n. 4. "To maintain the plea of an innocent purchaser, a person must have acquired the legal title, which he seeks to protect against some latent equity or charge on the land. Hence this plea can not avail a person who has bought on the faith of the possession of the escrow by the person named therein, where such possession has been obtained wrongfully. The conveyance made by the grantee in the escrow can not affect the legal title, for that remains in the grantor or his heirs. And as the equities of such purchaser and those of the heirs of the original grantor are equal, the legal title which is vested in such heirs must prevail." Ib. § 323.

In the leading case of Everts v. Agnes, 6 Wis. 453, and 4 Wis. 343, 65 Am. Dec. 314, it was held that "The fraudulent procurement of a deed deposited as an escrow, from the depositary by the grantee named therein, will not operate to pass the title; and a subsequent purchaser from such grantee, without notice and for a valuable consideration, derives no title thereby, and will not be protected." The reasoning is, that a delivery is essential to the vitality of a deed. The grantor must consent that the deed shall pass irrevocably from his control. It is this consent, express or implied, which gives the instrument efficacy. If there be a conditional delivery, by placing the instrument in the hands of a third person as an escrow, the condition must be strictly complied with before such delivery becomes effectual. Obtaining the instrument from the depositary by fraud, larceny, or any means other than the performance of the condition, is against the assent of the grantor; and as such assent is necessary to a delivery, and a delivery to the validity of the deed, the grantee gets no title and can convey

none.   In the case we have under consideration, the uncontra-
dicted testimony is to the effect, that the grantor placed the
instrument in the custody of the depositary with express in-
structions to him to deliver it to the grantee upon the payment,
by the grantee to the grantor, of a certain note given by the
former to the latter, and that the grantee fraudulently procured
possession of the instrument from the depositary without pay-
ing the note, the depositary being entirely innocent of any
wrong or bad faith.   If this be the truth of the case, we have
no hesitancy in holding that the instrument passed no title,
either to the grantee, or to an innocent purchaser from him.
The fact that the instrument was not technically an escrow,
because of a secret understanding between the grantor and
grantee that the note was never to be paid and that the instru-
ment was never to be delivered (there being no negligence or
fraudulent design on the part of the grantor), does not alter
the principle of the ruling above announced, but rather
strengthens the argument that no title passed from the grantor,
because she never intended that the instrument should be
legally executed by a delivery to the grantee.

While it is true that the fraud of his grantee in procuring
a conveyance can not be set up by the grantor to defeat the
title of a subsequent bona fide purchaser from such grantee,
because of the consent of the grantor to the execution and de-
livery of the conveyance, thus passing the title, yet that is not
the case we have to consider.   There is evidently a funda-
mental distinction between a case where, by fraudulent repre-
sentations, a grantor is induced to execute and deliver a deed,
and one where the instrument is obtained from a depositary
without the knowledge or consent of the depositor, or compli-
ance with the conditions on which the delivery depends.   In
the former case the act of the grantor is voluntary, and no
matter what deception may have induced him to execute the
conveyance, an innocent third person should not be made to
bear the misfortune of the grantor or to suffer for his credulity.
In the latter case there is no assent of the grantor, consequently
no delivery, and title never passes from him.   See Everts *v.*
Agnes, supra.   If a deed delivered in escrow be fraudulently

abstracted from the depositary by the grantee, without performing the conditions on which it was to be delivered to him, it is void even in the hands of a bona fide purchaser. Jackson v. Lynn (Supreme Court of Iowa), 62 N. W. Rep. 704. In the case at bar, according to the evidence submitted, Thomas, the depositary, was the special agent of petitioner, authorized by her to do one specific act, strictly ministerial in its character, that is, to deliver the instrument to Hitchens upon the payment of the note by him to petitioner. By the express and unequivocal instructions of his principal, this special agent only had authority to deliver the instrument upon the payment of the note, and a delivery in disregard of such instructions, induced by the fraud of the grantee practiced upon such agent, did not bind the principal, the evidence showing no negligence upon her part. A principal is bound only by the authorized acts of his agent. When Thomas, the special agent of petitioner, delivered the instrument to Hitchens before the payment of the note, the event which she had prescribed as a condition precedent to the delivery, it was an unauthorized act of such agent and a nullity as to petitioner. The instrument never became her deed, because it lacked one of the requisites of a valid deed—a delivery by the grantor or by some one authorized by her. The equitable rule, that where one of two innocent parties must suffer, he whose act has caused the loss must bear it, we do not think applies, in view of the evidence submitted in this case. There is no more equity in favor of the defendants, the bank and Barker, as innocent purchasers, than there is in favor of petitioner, whose special agent was fraudulently induced by Hitchens to deliver the instrument to him without his having complied with the condition precedent to a delivery, prescribed by petitioner; and their equities being equal, the legal title which remained in petitioner must prevail. Devlin on Deeds, § 323, and cases cited in n. 1. See *King* v. *Sparks*, 77 *Ga.* 285.

2. Where an escrow has been improperly delivered or obtained from the depositary by fraud, the grantor may ratify the delivery. An express ratification is not necessary; for ratification may be presumed where the grantor has recognized

the validity of the delivery, or where he has remained silent when called upon to speak and others have been injured. His conduct may be such as to create an estoppel in pais as to bona fide purchasers from the grantee. Cotton *v.* Gregory, 10 Neb. 125, 19 Am. Law Reg. 694; Reese *v.* Medlock, 27 Tex. 120, 84 Am. Dec. 611. In order that a ratification should be binding, it must have been made with a full knowledge of all the material facts. *State* v. *Railroad*, 70 *Ga.* 12 (3, a); *De Vaughn* v. *McLeroy*, 82 *Ga.* 700, and cases cited at bottom of page. In the present case there is no evidence of an express ratification by the grantor of the delivery to Hitchens. Whether plaintiff's acts were such as to raise a presumption of ratification was, under the evidence submitted, a question for the jury. From the loss of most of the papers relating to the matters in dispute, the illiteracy of the plaintiff, and other causes, the evidence on the question of ratification or estoppel is not at all definite, and the inferences to be drawn from it should have been left to the jury. See *Burr* v. *Howard*, 58 *Ga.* 564. Where reasonable men might differ as to the inferences to be drawn from certain evidence, the matter should be left to the jury although there may be no conflict in the evidence. And, under section 5347 of the Civil Code, a nonsuit should be granted only where "all the facts proved *and all reasonable deductions from them*" do not entitle plaintiff to recover. In the present case, the jury might have thought that the meager evidence relating to the matter did not warrant a finding that there had ever been a ratification by the plaintiff. Further, we think that, in the absence of an express ratification, the defendants should have been required to show that they had been injured by plaintiff's silence, inaction or acquiescence, before a ratification of the wrongful delivery could be presumed against her. The grant of the nonsuit can not, therefore, be sustained upon the theory that the evidence showed a ratification by the plaintiff.

3. It was contended that, as the depositary was the attorney of the grantee, the deed could not be delivered to him as an escrow; that the result of an effort to do so would be to vest the title immediately in the grantee. In support of this contention was cited the case of *Duncan* v. *Pope*, 47 *Ga.* 445, where

it was held: "A grantor can not deliver a deed to the grantee, or his attorney, as an escrow. Such a delivery would be equivalent to adding a parol condition to the instrument. To make the deed an escrow, it should be delivered to a third person, to be by him delivered to the grantee upon the performance of any required condition." This language, we think, was not intended to apply to cases like the present. It meant that a delivery to the agent or attorney of the grantee, employed to obtain possession of the instrument or to make the purchase for the grantee, was tantamount to a delivery to the grantee. This we think is true, but the agency must include the very matter of obtaining the conveyance for the grantee. The rule laid down applies where the delivery is made to the agent of the grantee as such agent, but has no application where the depositary is, though an agent or attorney of the grantee, yet not an agent to procure the conveyance and the delivery is to him as agent of both parties. "The delivery to the solicitor of the grantee of an instrument executed by the grantor will not convert the instrument from an escrow into a deed, provided the delivery is of a character negativing its being a delivery to the grantee." Watkins v. Nash, L. R. 20 Eq. Cas. 262. "The mere delivery of manual possession of the deed is not necessarily a delivery of the deed; and in cases where the acceptance of an agency from both involves no violation of duty to either, it is competent for the releasor to make the agent of the releasee his own agent for the purpose of holding the deed as an escrow, and returning it to him, the releasor, in case of non-performance of a stipulated condition. There is no such personal identity between the releasee and his agent as to preclude the latter from becoming the depositary of an escrow." Cinc. etc. R. Co. v. Iliff, 13 Ohio St. 235; Ashford v. Prewitt, 102 Ala. 264, 48 Am. St. Rep. 37.

In a broad sense, every depositary of an escrow is the agent of both parties. For the purpose of making delivery upon the performance of the conditions, he is no less the agent of the grantee than the agent of the grantor. Everts v. Agnes, supra; *Wellborn* v. *Weaver*, 17 *Ga.* 267. In the present case, Hitchens gave the depositary a small fee to represent him in

case "anything should come up." It does not appear that the attorney represented Hitchens in procuring the execution of the deed; nor that the grantor, at the time of the delivery of the deed to the depositary, knew that the latter had been employed to represent Hitchens; nor even that he was so employed prior to that time. The evidence was not such that the trial judge could properly assume that the deed was delivered to the attorney as agent of the grantee. The evidence seems to indicate that the contrary is true, and that the intention was to make the attorney the depositary of the escrow, to hold it until the performance of the condition and then to deliver it to the grantee,— to make the attorney, as to this matter, the agent of both parties. Certainly the evidence is sufficient to warrant such a finding by the jury, and the question should have been submitted to them.

4. The presumption of delivery, raised by the facts that the deed to Hitchens was given into his possession and that it had been recorded, was rebutted by evidence that the deed had been placed in the custody of a depositary, to be delivered only upon the performance of certain conditions, and that, through the fraud of the grantee, the delivery had been made without such performance. It seemed, therefore, that no title passed to the grantee and he could pass none to purchasers from him. Such purchasers, claiming under the grantee, could not be protected unless it were shown either that the improper delivery of the deed had been in some way ratified by the grantor, or that the depositary was the agent of the grantee to procure the conveyance, so that the delivery to him was in effect a delivery to the grantee. The question of possession is therefore not here material. If, however, the purchasers rely for protection upon acts of the grantor which would estop her to set up her title against them,—an estoppel in pais amounting to a ratification,—they will have to show that they acted in good faith.

*Judgment reversed. All the Justices concurring.*