## A01A0665. HARRIS v. DISTINCTIVE BUILDERS, INC.
## A01A0666. DOLIVE et al. v. DISTINCTIVE BUILDERS, INC.
### (549 SE2d 496)

BARNES, Judge.

This appeal involves negotiations between Distinctive Builders, Inc. ("DB") and Richard Harris, co-trustee of the Trust U/W of Katie Allen Harris ("Trust"), to purchase 3.03 acres of land off Northside Drive in Atlanta owned by the Trust. The primary issue before us is whether the parties entered into a binding sales contract. We hold that they did not and therefore reverse that portion of the trial court's order finding otherwise.

The parties do not disagree on the underlying facts, just on the underlying motivations and legal consequences. Harris and his wife jointly owned the property at issue here. When Harris's wife died, her will directed that a percentage of her assets be placed in trust for the benefit of Harris and the couple's three daughters. To fund part of the trust, Harris deeded his interest in the property to the trust, of which he was a trustee along with his wife's cousin by marriage, Earl Dolive. Harris then listed the property with a real estate broker, along with a separate, adjoining piece of property that included his house.

DB expressed interest in purchasing the property, and after going back and forth on the price, DB faxed an offer to Harris's real estate agent to purchase the property for $425,000. Harris signed the document, and his real estate agent faxed a copy back to DB with a cover page containing the following language: "Dick initialed the fax copies. He is getting the trustee to sign off tomorrow. I'll deliver your original late tomorrow. Thanks, P." Upon receiving the fax, DB's president called the agent and asked, "What's this bit about needing a trustee to sign it?" The agent responded that Harris said he needed to get another signature.

Harris then took the original document to his co-trustee, Dolive, who declined to sign it. Dolive explained that he had promised to give the adjoining landowner, Charles Loudermilk, a chance to top any bid made on the property. The day after receiving the faxed document and cover page, DB's president, who signed the offer on DB's behalf, wrote to Harris and his agent threatening to sue them for damages exceeding $1 million if they did not sell the property to him. Loudermilk did top DB's bid and purchased the property for $435,000. Harris never delivered the original document to DB.

DB sued in four counts: (1) breach of contract against the Trust, and against Harris and Dolive individually and as co-trustees; (2) fraud against "the defendants"; (3) tortious interference with contract against Dolive and Loudermilk and (4) interference with enjoyment of property against Harris, Dolive and Loudermilk.

Harris, Dolive, Loudermilk and the Trust moved for summary judgment on all counts, and DB moved for summary judgment against Harris on the breach of contract claim. The trial court held that Harris and DB did enter into a binding contract and granted summary judgment to DB against Harris on the breach of contract claim. The trial court further granted summary judgment to Dolive and the Trust on DB's breach of contract claim; denied summary judgment to Dolive, Loudermilk and the Trust on DB's tortious interference with contract claim; granted summary judgment to Harris, Dolive and Loudermilk on DB's tortious interference with property claim and denied summary judgment to Harris on DB's fraud claim. DB has not appealed the trial court's grant of summary judgment to Harris, Dolive and Loudermilk on its tortious interference with property claim or its grant of summary judgment to Dolive and the Trust on its breach of contract claim.

In Case No. A01A0665, Harris appeals the trial court's grant of summary judgment to DB on its breach of contract count and its denial of his motion on that count. Harris also appeals the trial court's denial of summary judgment to him on DB's fraud claim. In Case No. A01A0666, Dolive, Loudermilk and the Trust appeal the trial court's denial of summary judgment to them on DB's tortious interference with contract claim.

On appeal from a grant or denial of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997).

### Case No. A01A0665

1. The threshold issue before us is whether Harris and DB entered into a contract by virtue of DB signing and faxing the purchase agreement to Harris, then Harris signing the agreement and having his agent fax a copy back with a cover page that said: "Dick initialed the fax copies. He is getting the trustee to sign off tomorrow. I'll deliver your original late tomorrow. Thanks, P."

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. Additionally, a contract for the sale of land must be in writing. OCGA § 13-5-30 (4). The construction of a contract is a question of law for the court unless, after the application of the rules of construction, the contract remains ambiguous. *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 358 (2) (d)

(469 SE2d 458) (1996).

Contract construction involves three steps: (1) Is the language clear and unambiguous? If it is, the court simply enforces the contract according to its terms. If it is ambiguous, (2) the court must apply the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, (3) the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. *CareAmerica v. Southern Care Corp.*, 229 Ga. App. 878, 880 (1) (494 SE2d 720) (1997). While looking at the contract to determine whether it is clear and unambiguous, "[a]ll contemporaneous writings shall be admissible to explain each other." OCGA § 24-6-3 (a).

> The statute [(OCGA § 24-6-3 (a))] does not restrict this particular subsection to admit contemporaneous documents only if there is an ambiguity in the documents. In fact, subsection (b) of OCGA § 24-6-3 deals with the admission of parol evidence to explain ambiguities. In *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1) (314 SE2d 874) (1984), the Supreme Court declared that contemporaneous writings should be considered even if one of the writings purports to contain "the entire understanding of the parties hereto with respect to the transactions contemplated hereby" and even if the writings are not cross-referenced.

*Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452 (471 SE2d 537) (1996). In this case, while the purchase agreement appears to be complete in and of itself, we must look to all contemporaneous writings to determine the parties' intent.

"The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." OCGA § 13-2-4. "In some cases, the only evidence of the parties' intent is the express language of the contract. But in other cases, such as this one, 'the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement.'" *Legg v. Stovall Tire & Marine*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000).

Harris's agent faxed the contract back to DB with a contemporaneous cover sheet explaining that Harris's acceptance of the offer was conditioned on the co-trustee signing the contract. The cover page even specifies that the original would be delivered to DB once both signatures were obtained. Because Harris's acceptance was conditioned on his obtaining the second trustee's signature, and that signature was never obtained, DB's offer to buy the property for

$425,000 was never accepted and the parties did not enter into a binding contract. "When the intent is manifest that the contract is to be executed by others than those who actually sign[ed] it, it is inchoate and incomplete, and does not take effect as a valid and binding contract." *Peacock v. Horne*, 159 Ga. 707, 723 (2) (126 SE 813) (1925). Because Harris clearly expressed that his acceptance was conditional and never delivered the original to DB,

> [t]his case does not come within that class of cases wherein it is held that a party who signs and delivers an instrument is bound by the obligations it contains, although it is not executed by all the parties for whose signatures it was prepared, where there is nothing to indicate an intention on the part of him who signs not to be bound thereby until it is signed by others, which intention is brought home to the obligee therein, and where there is no express agreement or manifest intent to such effect, and where there is no loss of remedy by way of indemnity or contribution, by failure of other parties to execute the instrument.

(Punctuation omitted.) *Abernathy v. Grant*, 232 Ga. 880, 882 (1) (209 SE2d 210) (1974), citing *Peacock*, supra. Further, the statement, "He is getting the trustee to sign off tomorrow. I'll deliver your original late tomorrow," "indicates that this [document] did not purport to be an acceptance of the offer, but on the other hand that the offer would be accepted by the signed [original] contract." *Holland v. Riverside Park Estates*, 214 Ga. 244, 247 (104 SE2d 83) (1958).

*Johnson v. Sackett*, 256 Ga. 552 (353 SE2d 419) (1986), relied on by DB, is distinguishable from the case at bar, because the document in *Johnson* included no contemporaneous writings or any other evidence to indicate that the seller's acceptance was conditional.

We therefore reverse that portion of the trial court's order granting summary judgment to DB on its breach of contract claim against Harris and also reverse that portion of the order denying summary judgment to Harris on this count.

2. Harris also appeals the trial court's denial of his motion for summary judgment on DB's fraud claim against him. DB alleges in its complaint that Harris misrepresented that he owned an undivided interest in the property, a material element of the contract. DB then alleges that it relied on this misrepresentation by executing the contract for sale; that the "Defendants may have utilized Plaintiff's contract for the purchase of the property simply to generate a larger sales price for the property from Defendant Charles Loudermilk"; and that the "Defendants['] actions constitute willful misconduct, malice and that entire want of care which raises the presumption of

conscious indifference to the consequences." Finally, DB's complaint asserts that the "Defendants have acted in bad faith, been stubbornly litigious and Plaintiff is entitled to its attorneys fees and expenses of litigation pursuant to OCGA § 13-6-11" as well as punitive damages.

Punitive damages are not applicable to a claim for breach of contract. *Mikart, Inc. v. Marquez*, 211 Ga. App. 209, 212 (6) (438 SE2d 633) (1993). But punitive damages may be awarded in tort actions in which the plaintiff proves by clear and convincing evidence that the defendant's actions demonstrated fraud that would raise the presumption of conscious indifference to consequences. OCGA § 51-12-5.1 (b); *Davis v. Southern Exposition Mgmt. Co.*, 232 Ga. App. 773, 776 (4) (503 SE2d 649) (1998). However, mere bad faith on the part of the defendant in an action arising on a contract does not in itself authorize a punitive damage award. *Nestle Co. v. J. H. Ewing & Sons*, 153 Ga. App. 328, 332 (3) (265 SE2d 61) (1980).

To survive a motion for summary judgment on a fraud count, some evidence must support each of the five elements, which are: a false representation by a defendant; scienter; intention to induce the plaintiff to act or refrain from acting; justifiable reliance by plaintiff; and damage to the plaintiff. *Crawford v. Williams,* 258 Ga. 806 (375 SE2d 223) (1989). DB alleges that the defendants "may have" used DB's contract to cause Loudermilk to bid more for the property, but DB does not allege that the defendants used its contract to generate a higher offer from DB. Pretermitting whether DB has presented evidence that a material question of fact exists regarding the other four elements, DB has not shown that Harris's alleged misrepresentation about the property ownership was intended to induce him to act. Instead, DB only alleges that Harris's actions may have been intended to induce another party to act, by making a higher bid.

Further, Harris has presented direct evidence that his intention was not to mislead DB, but that he expected to obtain the signature of co-trustee Dolive on the sales contract, not knowing that Dolive had promised to give Loudermilk the chance to bid on the property. After Harris pointed to the lack of evidence to support this element of DB's fraud claim, DB was required to come forward with specific evidence giving rise to a triable factual issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Johnson v. Rodier*, 242 Ga. App. 496, 498 (2) (529 SE2d 442) (2000). As DB presented no specific evidence creating a triable issue, the trial court erred in denying summary judgment to Harris on DB's fraud count.

Accordingly, this appeal is remanded to the trial court with direction to enter summary judgment to Harris on DB's claims for breach of contract and fraud.

## Case No. A01A0666

3. In light of our holding in Division 1, the trial court erred in denying summary judgment to Dolive, Loudermilk and the Trust on DB's tortious interference with contract claim. If there is no contract, there can be no tortious interference with it.

Therefore, the trial court's denial of summary judgment is reversed and the case remanded to enter summary judgment to Dolive, Loudermilk and the Trust on DB's tortious interference with contract claim.

*Judgments reversed with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 23, 2001

*Kilpatrick Stockton, Thomas C. Harney, Michael T. Carithers, Craig A. Gillen,* for appellants.

*Weinstock & Scavo, Michael Weinstock, Adam M. Gleklen,* for appellee.