A09A0593. MERRITT et al. v. MARLIN OUTDOOR ADVERTISING, LTD.
(679 SE2d 97)

MIKELL, Judge.

This is a dispute between Thomas G. Merritt, owner of Waterway on the Ogeechee, Inc. (collectively, "Merritt"), a campground, and Marlin Outdoor Advertising, Ltd., a billboard advertising business whose president is Walter M. Czura (collectively, "Marlin"). Because Merritt appeals from the trial court's adverse rulings on summary judgment, we apply the following standard:

> Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.[1]

So viewed, the record reflects that Marlin executed two leases with Merritt's predecessors in title for the purpose of erecting billboards on the campground. The first lessor, Steve Way, signed a ten-year lease with Marlin in 1998 allowing it to erect a billboard sign with four "faces" of 12 by 24 feet each on the southern corner of the land (the "Southern sign") in exchange for annual payments of $1,750. The lease gave Way the right to use one of the faces to advertise the campground. On August 1, 2001, Way sold the campground to the

---

[1] (Citations omitted.) *Woody's Steaks, LLC v. Pastoria,* 261 Ga. App. 815, 816 (584 SE2d 41) (2003).

Testamentary Trust of Nettie Wade Thomas, and he assigned the lease to the Trust. Walter Simmons and his wife, Cheryl Simmons, were appointed as co-trustees in 2002. They hired Walter's brother, Joseph Wade Simmons ("Wade"), to manage the campground. At Marlin's request, Wade orally agreed to relinquish the right to use one of the faces on the Southern sign in exchange for Marlin's agreement to place a sign on the campground's building. However, according to Wade, Marlin stated that placing a sign on the building was not cost effective. Therefore, in 2003, Wade entered into a lease with Marlin letting it take over the one face of the Southern sign that advertised the campground in exchange for Marlin's promise to erect a four-by-eight-foot sign (the "small sign") for the campground on Highway 17. The lease allowed Marlin to erect a billboard sign on the northern portion of the campground (the "Northern sign") with the same dimensions as the Southern sign. The lease term was 150 years, and Wade agreed to accept a one-time payment of $10,000. The lease was contingent upon "receipt of all permits." Wade executed the lease "as trustee" for the Trust.

Marlin did not apply for a permit for the small sign, and the state Department of Transportation ("DOT") required that it be taken down. Marlin did not compensate the Trust for the loss of the sign and did not return the one face of the Southern sign to the Trust. Ms. Simmons, as co-trustee, attempted to reject the lease after she learned of it, but Marlin refused. Rather than initiate action against Marlin, the Trust sold the property to Merritt in 2004 and assigned to him all right of recourse against Marlin.

By letter dated October 15, 2004, Merritt, through counsel, demanded that Marlin remove the Northern sign. Marlin declined, and on February 7, 2005, Merritt filed suit for damages and an injunction. In the suit, as amended, Merritt sought to enjoin Marlin's continued use of the Northern sign, to rescind the lease of the Southern sign, to eject the signs from the land, and to recover $38,000 in mesne profits,[2] $40,000 for loss of revenues resulting from trespass to realty, $60,000 for the rental value of the Southern sign, punitive damages, and attorney fees. The complaint asserted claims of breach of contract, tortious interference with business, and fraud.[3] Marlin filed an answer and a counterclaim for tortious interference with contractual relations.

---

[2] "Mesne profits" are defined as "profits which have been accruing between two given periods . . . [;] [v]alue of use or occupation of land during the time it was held by one in wrongful possession." Black's Law Dictionary, p. 990 (6th ed. 1990).

[3] The trial court issued an interlocutory injunction preventing Marlin from lighting the Northern sign and requiring covers to be maintained on its faces so as not to create an unreasonable amount of noise.

Marlin filed a motion for summary judgment, arguing that Merritt's predecessors in title ratified the lease for the Northern sign; that Wade had inherent agency power to enter into the lease; and that Merritt had offered no evidence to support his claim for punitive damages. In response, Merritt filed the following motions: a "Motion to Determine Sufficiency of Evidence to Establish Factual Basis for Punitive Damages"; a motion for partial summary judgment on his claims of ejectment, trespass, and breach of contract with regard to both the Northern and Southern signs; and a motion to add Czura as a party. On June 29, 2007, the trial court granted Marlin's motion for summary judgment with respect to the Southern sign and denied it as to the Northern sign. The trial court entered separate orders denying each of Merritt's motions. On March 14, 2008, an administrative law judge for the DOT issued a decision concluding that the permit for the Northern sign was void at its inception. Thereafter, Merritt filed motions for reconsideration of the trial court's rulings on summary judgment. The motions were denied. Merritt has timely appealed all of the trial court's rulings.

1. In his first and sixth enumerations of error, Merritt contends that the trial court erred in granting Marlin's motion for summary judgment and in denying Merritt's motion for reconsideration on its claim that Marlin breached the lease of the Southern sign. We agree that questions of fact remain on whether Marlin breached the lease by failing to pay the correct amount of rent and by failing to provide a viable sign advertising the campground.

It is undisputed that the annual rental due under the lease was $1,750. The record contains a copy of a rental check in the amount of $1,500 issued by Marlin and payable to Waterway RV Campground. The check appears to be dated August 11, 2003. Merritt argues that Marlin breached the lease by failing to pay the correct rental amount, and Marlin has not responded to this allegation in its appellate brief. Accordingly, a question of fact remains on this issue.

Further, the Southern sign lease provided that "Lessor will have one northbound face." Thus, the agreement, which began in 1998 and ran for ten years, was for Marlin to pay $1,750 for three faces of the sign, but in fact, beginning in 2003, it received all four faces for the same rent.[4] The sign that Marlin was supposed to erect in its place along Highway 17 to advertise the campground proved futile, as the DOT did not permit it. Marlin offered nothing in its place, because, as Czura stated on deposition, "that was not [the] agreement." Furthermore, Ms. Simmons testified that Czura had stated

---

[4] Czura testified that he receives an average of $600 per month for each of the four faces on a billboard.

that he knew the DOT would not approve the small sign, "but he put it in the contract anyway because Wade didn't know any better." Thus, for approximately five years of the ten-year lease, the campground was not advertised as promised. While "[m]ere inadequacy of consideration alone will not void a contract,"[5] a partial failure of consideration can support a claim for breach of contract.[6] Merritt alleged failure of consideration on this basis in the complaint. Construing the evidence favorably to Merritt, a jury question remains on whether Marlin's failure to provide advertising for the campground resulted in a partial failure of consideration.[7] The trial court thus erred in granting summary judgment to Marlin on Merritt's claim of breach of the Southern sign lease and in denying Merritt's motion for reconsideration on this issue.[8]

2. In his second enumeration of error, Merritt argues that the trial court erred in denying his motion for partial summary judgment concerning whether Marlin breached the leases of both the Northern and Southern signs. We disagree.

(a) The Southern sign. As Merritt makes no additional argument as to why he is entitled to judgment as a matter of law with regard to the lease of the Southern sign, we reiterate our holding in Division 1 that questions of fact remain on this claim.

(b) The Northern sign. Merritt argues that, as a matter of law, Marlin breached the lease for the Northern sign because the lease was expressly contingent upon "receipt of all permits," and Marlin failed to obtain a permit for the small sign. Marlin argues that it was not required to obtain a permit. Merritt, however, fails to cite authority concerning breach of conditions precedent or subsequent as a basis for this argument.[9] Thus, we cannot conclude that the trial court erred in denying summary judgment to Merritt on this basis.

Marlin, on the other hand, argues that Merritt's predecessors in

---

[5] OCGA § 13-3-46.

[6] See *Powell v. Norman Elec. Galaxy*, 229 Ga. App. 99, 102 (1) (493 SE2d 205) (1997); *Speir v. Nicholson*, 202 Ga. App. 405, 408 (2) (414 SE2d 533) (1992).

[7] See generally *Silver v. City of Rossville*, 253 Ga. 13, 15 (4) (315 SE2d 898) (1984) (issue of fact remained on question of whether there was a failure of consideration under a lease/option).

[8] Marlin argues that both leases have been ratified, but this argument applies only to the lease for the Northern sign, so we do not consider the argument within this division.

[9] See, e.g., *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (1) (b) (388 SE2d 916) (1989):

Conditions may be precedent or subsequent. A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties.

(Citation omitted.)

title ratified this lease by accepting the $10,000 lease payments in full. Merritt devotes much of its brief to disputing this contention.

> It has long been the law in Georgia that a ratification by the principal relates back to the act ratified, and takes effect as if originally authorized. A ratification may be express, or implied from the acts or silence of the principal. Where a principal is informed by his agent of what he has done, the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed. Unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed.[10]

But in order for a ratification to be binding, the principal must have had full knowledge of all material facts.[11] Here, the evidence is in sharp conflict as to whether Wade had the authority to enter into the lease and whether the Trust was bound by his actions. It is undisputed that Wade did not ask permission from the trustees to execute the lease. Ms. Simmons, a co-trustee, deposed that she knew nothing about the Northern sign until she hired a real estate agent to sell the property, and that she immediately contacted Czura and notified him that she and her husband were the only trustees. Ms. Simmons averred that she explained to Marlin that she did not approve of the lease and had never authorized Wade to sign it. Where the evidence is in conflict, the question of whether a ratification has occurred is for the jury to decide.[12] Whether Wade had any authority to bind his principal or whether a ratification occurred are matters for the jury to decide. Furthermore, Marlin has not cross-appealed the denial of its motion for summary judgment on the issue of breach of the lease of the Northern sign,[13] and Merritt has not shown that it is entitled to judgment as a matter of law on this claim. It follows that the trial court did not err in denying Merritt's motion for partial summary judgment as to breach of this lease.

3. Merritt enumerates as error the denial of his "Motion to

---

[10] (Citations and punctuation omitted.) *Dobbs v. Titan Properties*, 178 Ga. App. 389, 390 (1) (343 SE2d 419) (1986) (even if contract was initially invalid, corporation ratified it).

[11] *Dixon v. Bristol Savings Bank*, 102 Ga. 461, 468 (31 SE 96) (1897).

[12] Id. Accord *Charles P. Burr & Co. v. William H. Howard & Sons*, 58 Ga. 564, 567 (1877); *Kohlmeyer v. Lightfoot*, 118 Ga. App. 783, 788 (1) (165 SE2d 432) (1968).

[13] For this reason, we do not address Marlin's argument that Wade had "inherent agency power" to enter into the lease. See *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229, 232 (219 SE2d 162) (1975) ("[i]nherent agency power is the power of an agent which is derived not from authority, apparent authority or estoppel, but solely from the agency relation and exists for the protection of persons harmed by or dealing with a servant or other agent") (citation and punctuation omitted).

Determine Sufficiency of Evidence to Establish Factual Basis for Punitive Damages.''[14] In the motion, Merritt seeks to discover Marlin's net worth. Merritt's motion is premised upon *Holman v. Burgess*,[15] in which we held that a plaintiff ''was not entitled to discover information concerning . . . personal financial resources absent an evidentiary showing (by affidavit, discovery responses, or otherwise) that a factual basis existed for [the] punitive damage claim.''[16]

> Punitive damages are not applicable to a claim for breach of contract. But punitive damages may be awarded in tort actions in which the plaintiff proves by clear and convincing evidence that the defendant's actions demonstrated fraud that would raise the presumption of conscious indifference to consequences.[17]

Merritt claims that he is entitled to recover punitive damages due to Marlin's fraud. A fraud claim has five essential elements: ''(1) a false representation or concealment of material fact; (2) scienter; (3) intent to induce the allegedly defrauded party to act or refrain from acting; (4) justifiable reliance; and (5) damages.''[18] ''A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud.''[19] Merritt argues that the evidence supports a finding that when he entered into the Northern lease with Wade, Czura knew that the DOT would not permit the small sign on Highway 17. Czura countered with an affidavit in which he stated that he had explained to Wade that the DOT might remove the sign if it was placed in the right of way. Czura also averred that at the time, he did not know the exact parameters of the right of way.

Merritt also claims that Marlin committed fraud with respect to the Northern lease because Wade testified that Marlin represented that the lease term was 99 years, not 150. But Wade also admitted that the checks he received from Marlin said ''150-year Ogeechee lease'' on the bottom. In addition, Merritt claims that at the time

---

[14] The trial court denied the motion without explanation. Marlin moved for summary judgment on the issue of punitive damages, so the issue is squarely before us.

[15] 199 Ga. App. 61 (404 SE2d 144) (1991).

[16] Id. at 64.

[17] (Citations omitted.) *Harris v. Distinctive Builders*, 249 Ga. App. 686, 690 (2) (549 SE2d 496) (2001). See OCGA § 51-12-5.1 (b).

[18] (Footnote omitted.) *Young v. Oak Leaf Builders*, 277 Ga. App. 274, 278 (3) (626 SE2d 240) (2006).

[19] (Citation and punctuation omitted.) *Rogers v. deMonteguin*, 193 Ga. App. 480, 482 (1) (388 SE2d 10) (1989).

Marlin entered into both leases, it lacked authority to transact business in this state. But Merritt has not shown how any purported fraud committed against the state in obtaining proper certification induced any action on the part of Wade or the Trust.

Based upon a careful review of all of the depositions and documentary evidence submitted by Merritt in support of his claim for punitive damages and submitted by Marlin in opposition thereto, we conclude that Merritt has not presented clear and convincing evidence that Marlin's actions showed sufficient fraud to raise the presumption of conscious indifference to consequences. Thus, we hold that the trial court did not err in denying Merritt's motion as filed.[20]

4. Finally, Merritt argues that the trial court erred in denying its motion to add Czura as a party. "A trial court's decision as to whether a party should be added to a lawsuit lies in the court's sound discretion and will be overturned on appeal only upon a showing of abuse of that discretion."[21] We discern no abuse of discretion in the case at bar.

Merritt sought to add Czura pursuant to OCGA § 9-11-19 (a) (1), which provides that "[a] person who is subject to service of process shall be joined as a party in the action if . . . [i]n his absence complete relief cannot be afforded among those who are already parties." In other words, "[i]f there are no compelling reasons for joining third parties, then they are not indispensable, and it is not necessary to join them for a just adjudication of the action between the original parties."[22] Merritt has not made this showing. He claims that Czura has committed fraud, so that Marlin's corporate veil should be pierced in order that he may be held individually liable. "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility."[23] Assuming without deciding that Czura acted fraudulently, he could, at most, be held liable as a joint tortfeasor with Marlin Outdoor Advertising, Ltd. "Joint tortfeasors are not indispensable parties in an action against one of them, because their liability is both joint and

---

[20] We express no opinion on the merits of Merritt's fraud claim, as it is not before us.

[21] (Citation and punctuation omitted.) *Rasheed v. Klopp Enterprises*, 276 Ga. App. 91, 92 (1) (622 SE2d 442) (2005).

[22] (Citations and punctuation omitted.) *Aldalassi v. Drummond*, 223 Ga. App. 192-193 (2) (477 SE2d 372) (1996).

[23] (Citation and punctuation omitted.) *Amason v. Whitehead*, 186 Ga. App. 320, 321-322 (367 SE2d 107) (1988).

several."[24] Thus, Merritt may obtain complete relief in Czura's absence, and the trial court did not abuse its discretion in denying Merritt's motion to add him as a party pursuant to OCGA § 9-11-19 (a) (1).

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 21, 2009.

*William G. Maston*, for appellants.
*John D. Harvey*, for appellee.

[24] (Citations omitted.) *Ford v. Olympia Skate Center*, 213 Ga. App. 600, 602 (2) (445 SE2d 362) (1994).