**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 7, 2023**

# In the Court of Appeals of Georgia

A22A1368. STEFFEY v. AMERIS BANK et al.

MCFADDEN, Presiding Judge.

Pamela Steffey appeals the trial court order dismissing her complaint for failure to state a claim upon which relief may be granted. We affirm the trial court's dismissal of Steffey's claims for employment discrimination, intentional infliction of emotional distress, and violation of the Georgia Fair Lending Act (and the derivative claim for punitive damages). We reverse the dismissal of her claim for breach of contract and the implied duty of good fath as well as her claim for costs and attorney fees.

1. *Standard of review and factual background.*

We review de novo the grant of a motion to dismiss for failure to state a claim. *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012). A trial court may grant a motion to dismiss for failure to state a claim upon which relief may be granted when

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In reviewing such a motion, any doubts regarding the complaint must be construed in favor of the plaintiff.

*Norman v. Xytex Corp.*, 310 Ga. 127, 130-131 (2) (848 SE2d 835) (2020) (citations, punctuation, and footnote omitted). See also OCGA § 9-11-12 (b) (6).

"When considering a motion to dismiss for failure to state a claim, a trial court may consider the complaint, the answer, and any exhibits attached to and incorporated into the complaint and answer." *Mark A. Schneider Revocable Trust v. Hardy*, 362 Ga. App. 149, 150 (1) (867 SE2d 153) (2021). "To the extent that there is any discrepancy between the allegations in the complaint and [such] exhibits . . ., the exhibits control." *Racette v. Bank of America*, 318 Ga. App. 171, 172 (733 SE2d 457) (2012).

The complaint, the answer, and the loan documents attached to the answer show the following. Steffey sought a residential construction loan from defendant Ameris Bank to renovate her residence. Defendant Kevin Jones was the mortgage loan officer who represented Ameris Bank.

On November 28, 2018, Steffey signed a promissory note in which she promised to pay $453,100 plus interest of 4.99 percent, with monthly payments of $2,429.57 beginning on January 1, 2019. The maturity date of the note was December 1, 2048. The note provided that "a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument'), dated the same day as [the] Note" protected the lender, although no such security instrument is attached to the complaint or the answer.

The same day, Steffey executed a construction loan agreement that provided that, as of the closing date and pursuant to the promissory note, the lender committed to disburse the loan principal amount of $453,100 to Steffey and her contractor at various points in the construction process. The agreement provided that any loan commitment amount that remained after the disbursements had been made would be "credited as a partial prepayment of the principal amount of the Loan at the time of the final Advance."

Steffey abandoned the renovation of her residence and made no draws from the renovation funds available to her. Nevertheless, the defendants have calculated a balance due of $95,000 in interest accrued from the inception of the transaction.

Steffey alleged that she and her husband demanded that Ameris modify the loan documents to reflect that Ameris had not advanced any renovation funds. She alleged that because the defendants had not advanced any funds, the defendants' documents reflected an incorrect loan balance. Steffey alleged that the defendants refused to modify the loan documents, thus harming Steffey by causing a miscalculation of the amount due. She also alleged that Jones never notified his supervisors or other bank personnel of Steffey's position that the loan balance was incorrect.

2. *Title VII*.

Steffey alleged in the complaint that in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq., the defendants were motivated by her sex to pursue the claim against her, to harass her, to retaliate against her, to make false credit reports, and to slander and libel her. Title VII "makes it unlawful for an employer to discriminate against any of his employees or applicants for employment who have availed themselves of Title VI''s protections." *Murray-Obertein v. Ga. Govt.*

*Transparency & Campaign Finance Comm.*, 344 Ga. App. 677, 679 (812 SE2d 28) (2018) (citation and punctuation omitted). Steffey did not allege that the defendants employed her or that she was an applicant for employment. So the trial court did not err by dismissing this claim. See *Wheale v. Polk County*, Case No. 21-13676, 2022 U.S. App. LEXIS 27679, at *6 (11th Cir. 2022) (plaintiff's allegations did not state a claim under Title VII because plaintiff did not qualify as an employee).

3. *Intentional infliction of emotional distress*.

Steffey alleged in her complaint that the defendants' actions amounted to the intentional infliction of emotional distress and argues that the trial court erred by dismissing this claim. We disagree.

In determining

> whether the conduct complained of was sufficiently extreme and outrageous [to support such a claim, the rule of thumb] is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim "Outrageous!" It must be so serious as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. It does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living, but must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a

5

civilized community. Whether reasonable persons could find the conduct reaches this level is a question of law for the court. The conduct alleged by [Steffey] in [her] complaint, as a matter of law, does not rise to this level.

*Bazemore v. U. S. Bank Nat. Assn.*, 363 Ga. App. 723, 732-733 (f) (872 SE2d 491) (2022) (citation and punctuation omitted). The trial court did not err by dismissing this claim.

4. *Georgia Fair Lending Act*.

Steffey alleged in her complaint that the defendants' refusal to modify the loan documents to reflect that no funds had been advanced for her renovation amounted to an unlawful banking practice under the Georgia Fair Lending Act, OCGA § 7-6A-1 et seq. But nothing in the Act imposes a duty on a lender to modify loan documents and Steffey does not allege any other conduct that might fall within the Act.

The Act imposes certain limitations and prohibits certain practices when lenders make home loans as defined in the Act. OCGA § 7-6A-2 (8). (It imposes additional limitations on high-cost home loans as defined in the Act. OCGA § 7-6A-2 (7), (17). Steffey does not allege that her loan was a high-cost home loan, so our focus is on the prohibitions related to home loans.)

With exceptions not applicable here, the Act defines a "home loan" as

a loan, including an open-end credit plan where . . . the loan is secured by a mortgage, security deed, or deed to secure debt on real estate located in this state upon which there is located or there is to be located a structure . . . designed principally for occupancy of from one to four families and which is or will be occupied by a borrower as the borrower's principal dwelling. . . .

OCGA § 7-6A-2 (8). In regards to home loans, the Act provides that:

(1) No creditor shall make a home loan that finances, directly or indirectly [certain kinds of insurance coverage]; (2) No creditor or servicer shall recommend or encourage default on an existing loan or other debt prior to and in connection with the closing or planned closing of a home loan that refinances all or any portion of such existing loan or debt; (3) No creditor or servicer may charge a borrower a late payment charge unless the loan documents specifically authorize the charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. . . .; and (4) No creditor or servicer may charge a fee for informing or transmitting to any person the balance due to pay off a home loan or to provide a release upon prepayment.

OCGA § 7-6A-3. Steffey does not allege that the defendants made the loan to finance insurance; encouraged her to default on an existing loan; improperly charged late payment fees; or charged a fee for informing her of the pay-off balance. So she did not allege a violation of the Act.

7

In her appellate brief, Steffey argues that, in effect, since she made no draws on the renovation funds, her loan was an "open-end credit plan" as defined in OCGA § 7-6A-2 (11), which allowed the lender to impose a finance charge on any outstanding balance. But, she argues, because there was no outstanding balance — since she never made any draws — the defendants improperly imposed a finance charge in violation of the Act. But the language regarding finance charges is simply part of the definition of "open-end credit plan":

> "Open-end credit plan" or "open-end loan" means a loan in which (A) a creditor reasonably contemplates repeated transactions; (B) the creditor may impose a finance charge from time to time on an outstanding balance; and (C) the amount of credit that may be extended to the borrower during the term of the loan, up to any limit set by the creditor, is generally made available to the extent that any outstanding balance is repaid.

OCGA § 7-6A-2 (11). That definition does not prohibit any particular practice of a lender, so Steffey does not allege a violation of the Act. The trial court did not err by dismissing Steffey's claim for a violation of the Act. Further, because her claim for punitive damages is derivative of her claim for violation of the Act, the trial court did not err by dismissing the claim for punitive damages.

5. *Breach of contract*.

8

Steffey alleged in her complaint that the defendants breached the parties' contract by: seeking payment from her when she had not made any draws; pursuing "fee income"; and violating provisions of the Real Estate Settlement Procedures Act, 12 USC § 2601 et seq. "We are unable to say with certainty that [Steffey] would not be entitled to relief under any state of facts which could be proved in support of [her] general allegations [of a breach of contract]." *Walker v. Gowen Stores*, 322 Ga. App. 376, 378 (745 SE2d 287) (2013) (citation and punctuation omitted). So we reverse the dismissal of the breach-of-contract claim.

To state a claim for breach of contract, the complaint must allege the existence of a contract, the failure of the defendant to perform an obligation under the contract, and resulting damage. *Douglas v. McNabb Realty Co.*, 78 Ga. App. 845, 850 (1) (c) (52 SE2d 550) (1949). Steffey's complaint makes such allegations. The promissory note, one of the loan documents that formed the parties' contract, provides, "*In return for a loan that I have received*, I promise to pay U.S. $453,100.00 (this amount is called 'Principal'), plus interest, to the order of the Lender." (Emphasis supplied). Construing the complaint in Steffey's favor, she alleged that, in spite of the note's representation otherwise, she did not receive the loan because she did not receive any

funds for the renovation of her house. She alleged that the defendants nonetheless sought payment.

"While mere inadequacy of consideration alone will not void a contract, a partial failure of consideration can support a claim for breach of contract." *Merritt v. Marlin Outdoor Advertising*, 298 Ga. App. 87, 90 (1) (679 SE2d 97) (2009) (citations and punctuation omitted). See also *McClure v. Thomas Cook, Inc.*, 158 Ga. App. 467, 468-469 (2) (280 SE2d 876) (1981) (plaintiff did not fail, as a matter of law, to show a breach of contract when she testified that defendant's representation about the bargained-for consideration for their agreement was false).

Under this authority, we cannot say that "the allegations of the complaint disclose with certainty that [Steffey] would not be entitled to relief under any state of provable facts asserted in support [of her claim for breach of contract and the implied duty of good faith]." *Norman*, 310 Ga. at 130-131 (2) (citation and punctuation omitted). So we reverse the dismissal of the breach-of-contract claim. We do not address Steffey's other allegations of breach of contract.

We also reverse the dismissal of Steffey's claim for the costs of litigation and attorney fees under OCGA § 13-6-11, among other statutes. See *Roberts v. JP Morgan Chase Bank*, 342 Ga. App. 73, 80 (5) (802 SE2d 880) (2017). We observe

10

that Steffey's claim for breach of the duty of good faith is not a separate claim because the implied covenant of good faith and fair dealing "cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." *U. S. Bank v. Phillips*, 318 Ga. App. 819, 824-825 (2) (734 SE2d 799) (2012) (citation, punctuation, and emphasis omitted).

*Conclusion*.

In sum, we affirm the trial court's dismissal of Steffey's claims for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq.; intentional infliction of emotional distress; and violation of the Georgia Fair Lending Act, OCGA § 7-6A-1 et seq., and the derivative claim for punitive damages. But we reverse the trial court's dismissal of Steffey's claim for breach of contract and the implied duty of good faith and her claim for litigation costs and attorney fees.

*Judgment affirmed in part and reversed in part. Land, J., concurs. Gobeil, J., concurs fully in Divisions 1, 2, 3 and 4; and dissents in Division 5.*

# In the Court of Appeals of Georgia

A22A1368. STEFFEY v. AMERIS BANK et al.

GOBEIL, Judge, concurring in part and dissenting in part.

I concur fully in Divisions 1 through 4 of the majority's opinion. However, as explained below, I dissent to Division 5, which reverses the trial court's dismissal of Pamela Steffey's ("Plaintiff") claim for breach of contract and the implied duty of good faith, as well as her claim for costs and attorney fees.

As an initial matter, Plaintiff's counseled brief fails to raise any arguments on appeal specific to the dismissal of her breach-of-contract claim. See *Morris v. Mullis*, 264 Ga. App. 428, 431 (590 SE2d 823) (2003) ("We do not consider issues not raised on appeal. Instead, our jurisdiction is limited to the consideration of legal points raised by enumeration of error.") (citations omitted). Rather, she summarily asserts that "[t]he complaint specifies with particularity the what, where, when and how of the misconduct of the Defendants." In her reply brief, Plaintiff points to allegations in her complaint — that she notified Ameris Bank that the loan balance was incorrect

2

because she never received any disbursements of the loan — and argues this was sufficient to survive a motion to dismiss. However, "this Court will not consider arguments raised for the first time in a reply brief." *Barron v. Wells Fargo Bank, N. A.*, 332 Ga. App. 180, 187 (4) (769 SE2d 830) (2015).

Even assuming that Plaintiff sufficiently raised a challenge to the trial court's dismissal of her breach-of-contract claim, she has failed to show that the plain language of the loan documents (which were attached as exhibits to the answer), support her assertion that she should not have been charged interest on the full amount of the principal because she never made or requested any draws from the loan. See *Behdadnia v. E. E. Beavers Family Partnership, L.P.*, 345 Ga. App. 711, 711 (815 SE2d 103) (2018) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. . . . To the extent that there is any discrepancy between the allegations in the complaint and the exhibits attached to it, the exhibits control.") (citations and punctuation omitted). The Note, with a principal amount of $453,100, provided for an annual interest rate of 4.990 percent that would be "charged on unpaid principal until the full amount of Principal has been paid." The Payment and Amortization Schedule for the loan shows that each month's payment — beginning with the first month's payment on January 1, 2019 — included payment

3

towards both the full principal amount of $453,100[1] and any accrued interest on the principal. For example, the first payment, due on January 1, 2019, was for $2,429,57 which was to be applied as follows: $545.43 to principal (reducing the outstanding principal balance from $453,100 to $452,554.57) and $1,884.14 to interest (at a rate of 4.990 percent). Based on the plain language of the loan documents, it appears that the entire amount of the loan was fully funded at the time of closing, and Plaintiff has failed to allege how Ameris Bank improperly calculated the amount due. See *Emory Healthcare, Inc. v. van Engelen*, 362 Ga. App. 818, 821-822 (870 SE2d 223) (2022) (if the language of a contract is clear and unambiguous, "the contract is enforced according to its plain terms, and the contract alone is looked to for meaning") (citation and punctuation omitted).

The majority cites case law in support of the proposition that the partial failure of consideration can support a claim for breach of contract. However, the instant case is distinguishable: here, Plaintiff opted not to take any draws from the loan, as opposed to Ameris Bank's refusal to pay out any portion of the agreed upon loan.

---

[1] The principal amount of the loan was $453,100, which was intended to refinance existing mortgage debt and finance the renovation of Plaintiff's home. At closing, Ameris Bank disbursed $106,213 to pay off the existing mortgage and pay closing costs, leaving approximately $346,887 in principal for the renovation.

4

Compare *Merritt v. Marlin Outdoor Advertising*, 298 Ga. App. 87, 90 (1) (679 SE2d 97) (2009) (genuine issue of material fact as to whether billboard owner's failure to provide advertising for campground resulted in a partial failure of consideration for lease precluded summary judgment).[2]

Because there is no connection in the plain language of the loan documents or otherwise between the accrual of interest and the number of draws made or the amount of those draws, Plaintiff has failed to allege how Ameris Bank breached the terms of the contract between the parties and I would therefore affirm the trial court's dismissal of the breach-of-contract claim.

---

[2] As to Plaintiff's remaining arguments in her complaint pertaining to her breach-of-contract claim — namely that the Defendants breached the parties' contract by pursuing "fee income" and violating provisions of the Real Estate Settlement Procedures Act, 12 USC § 2601 et seq. — Plaintiff abandoned these claims by failing to raise any arguments on appeal.