64776. COOK FARMS, INC. et al. v. BOSTWICK et al.

SOGNIER, Judge.
Lessees P. T. Bostwick and Fred Gleaton, Jr., d/b/a Tri-County Farms, filed declaratory judgment actions against lessors Cook Farms, Inc. and Dr. Fred M. Garrett, seeking clarification of their obligations under two lease agreements due to a change in the law governing a portion of the farmlands leased. The lessors answered and sought by counterclaim to recover accrued rentals and attorney fees as provided in the agreements. Dr. Garrett further contended that he had fully performed an agreement in his lease to install an underground irrigation system, with a balance due of $24,360.09 plus interest. The trial court found the agreements to be null and void because the subject matter of the leases had been abolished by legislative enactment. The lessors appeal.

Under these agreements appellees agreed to lease from appellants certain described farmland for a period of five years commencing January 1, 1981. One farm consisted of 78.6 acres of peanut allotment land and 200.8 acres of non-allocated farmland, and rented for $21,744 a year. The other lease was for 197.9 acres of peanut allotment land and three parcels of non-allocated land totaling approximately 1,375 acres, renting for $54,022 a year.

Appellees made all payments in accordance with the leases for the year of 1981.

At the time the leases were executed, appellants had been issued acreage allotments to grow peanuts on these farms as provided by the Agricultural Adjustment Act (52 Stat. 31; 7 USCA § 1281 et seq.). Under the Act only those farms to which such acreage had been allotted by the local county Agricultural Stabilization and Conservation (ASC) Committee could plant over one acre of peanuts without penalty, thereby assuring a favorable market for such growers. However, on December 22, 1981 Congress abolished the Act, allowing unlimited production of peanuts under poundage quotas. Appellees notified appellants of the change in the law, advising them that since appellants as lessors could no longer deliver the peanut allotments and perform under the terms of the agreements, appellees considered the leases to be void and unenforceable. Appellants responded that they expected appellees to perform under the agreements and that if the rentals due were not paid within 10 days, default would be declared and all payments and attorney fees collected through legal process.

1. Appellants challenge the use of the declaratory judgment act; however, a determination of the rights of the parties to a lease agreement is a proper subject for relief under the act (OCGA § 9-4-2; former Code Ann. § 110-1101). See, e.g., *Williams-East, Inc. v. Weeks,* 156 Ga. App. 861 (275 SE2d 801) (1981); *Peter E. Blum & Co. v. First Bank Bldg. Corp.,* 156 Ga. App. 680 (275 SE2d 751) (1980); *St. Regis Paper Co. v. Brown,* 155 Ga. App. 679 (272 SE2d 544) (1980).

2. Appellants contend that service upon appellant Cook Farms, Inc. was invalid because the return of service indicated that Robert Cook was served individually, rather than in his capacity as president and registered agent of the corporate party. The testimony of the deputy who served process shows that he knew Cook Farms was the defendant in the suit and that Robert Cook was a proper representative to be served. Thus any omission on the return of service itself was cured. *Montgomery v. USS Agri-Chemical Div.,* 155 Ga. App. 189 (1) (270 SE2d 362) (1980); *Harvey v. Harvey,* 147 Ga. App. 154 (1) (248 SE2d 214) (1978).

3. Appellants complain of the allowance in evidence of four exhibits tendered by appellees over objections that they were offered to vary the clear and unambiguous terms of the lease agreements and were irrelevant. The terms of the leases, referring to certain described farmland consisting partially of peanut allotment acreage and other unallocated acreage with one lump sum rental payment per year, were not vague or ambiguous. According to the undisputed testimony of the parties, a "package deal" was intended to be leased "for a total

dollar value." Thus extrinsic evidence was unnecessary to explain the effect of the terms of the leases. *Farm Supply Co. v. Cook,* 116 Ga. App. 814, 819 (159 SE2d 128) (1967).

Two of the documents were worksheets containing figures upon which the rental payments were based. These memoranda, which were drawn before the agreements were written in final form, calculated the rentals at $200 an acre for the peanut allotment acreage and $25 an acre for the unallocated farmland. Such evidence is not admissible. "All negotiations entered into prior to or contemporaneously with the execution of a written contract are merged into the written contract. [Cit.]" *Mitchell v. Excelsior Sales & Imports,* 243 Ga. 813, 815 (1) (256 SE2d 785) (1979); see also *Salome v. First Nat. Bank,* 162 Ga. App. 394 (291 SE2d 452) (1982). However, the case was tried without a jury and " 'the trial judge has a much broader discretion in the admission of evidence since it is presumed that in his consideration of the evidence he sifted the wheat from the chaff and selected the legal testimony.' " *Atlas Supply Co. v. U. S. Fidelity &c. Co.,* 126 Ga. App. 483, 485 (3) (191 SE2d 103) (1972). Moreover, the court noted in admitting these documents that it knew what it could consider in the legal construction of the lease and would not consider inadmissible evidence. Consequently a new trial is not required on this ground. *Citizens &c. Bank v. Morris &c. Corp.,* 243 Ga. 169 (2) (253 SE2d 89) (1979); *United Rentals Systems v. Safeco Ins. Co.,* 156 Ga. App. 63 (1 (b)) (273 SE2d 868) (1980).

The other documents objected to were letters written subsequent to the execution of the leases by appellees advising appellants of the legislative abolition of the federally controlled peanut acreage allocations and their opinion as to the effect this would have on the lease agreements. These letters did not attempt to vary the terms of the agreements, but merely stated the basis for bringing the lawsuits. As such they were relevant and admissible under OCGA § 24-3-2 (former Code Ann. § 38-302) as facts to explain conduct and ascertain motive. See *Bodrey v. Bodrey,* 246 Ga. 122 (2) (269 SE2d 14) (1980); *Browder v. Aetna Life Ins. Co.,* 126 Ga. App. 140, 144 (2) (190 SE2d 110) (1972).

4. Appellants contend that the trial court erred in declaring the lease agreements to be void and unenforceable. We agree. Under the Agricultural Adjustment Act, acreage allotments of enumerated crops were made only for the period of one year. Both appellees and appellants, none of whom were novices in the farming business, knew or were charged with knowledge of the Act and its mode of regulation. See *Balkcom v. Cross,* 216 Ga. 530, 531-32 (118 SE2d 185) (1961); *Conifer Farms, Inc. v. Brent,* 237 Ga. 42 (226 SE2d 585) (1976); *Combustion Engineering v. Norris,* 246 Ga. 413 (2) (271 SE2d 813)

(1980). However, no express provision was made in these agreements for any changes in the law, which could certainly have been anticipated. Where a party voluntarily assumes a duty or liability, he is not relieved of his responsibility to perform under the contract when he might have provided for such contingencies. *Goodrum Tobacco Co. v. Potts-Thompson Liquor Co.,* 133 Ga. 776 (66 SE 1081) (1909).

This rule was discussed and applied in *Lawrence v. White,* 131 Ga. 840 (63 SE 631) (1908), where "a hotel building [was] described in the lease contract as consisting of 'the corridor, office, bar, barber-shop, etc.' The tenant claimed partial abatement of the rent agreed to be paid, because after the lease the legislature had passed an act prohibiting the sale of alcoholic, spirituous, malt, or intoxicating liquor, and the barroom could no longer be used for the purpose of conducting such business; and this court held that in the absence of any provision in the contract of lease for that purpose the tenant was not entitled to a reduction of the agreed rental . . . The reasoning of the court was, that, from the nature of the business, the sale of intoxicating liquors was embraced in the State's police power of regulation or entire prohibition; that the lessee took the tenement subject to the legislature's prohibition of the sale of intoxicating liquors; and that, if the tenant desired to protect himself against any possible change of the law, it was his duty to so stipulate in the contract, and it was his fault if such stipulation was omitted; that the landlord neither contracted nor warranted that the law would remain unchanged; and that the tenant is not excused from the payment of the rent, either in whole or in part, because since the passage of the prohibition act he is prevented by the law from conducting a business made illegal by that act." *Goodrum Tobacco Co.,* supra, at 778-779. See also *Fagala v. Morrison,* 146 Ga. App. 377 (3) (246 SE2d 408) (1978).

By express provision in the lease contracts here, the parties agreed that no estate for years was created by the five-year leases, only that of landlord and tenant as to the leased premises. Having failed to protect themselves as lessees against possible changes in the laws governing peanut allotments, appellees are bound to the terms of the leases. The trial court erred in ruling that in abolishing the peanut allotments, Congress had by legislative enactment eliminated the subject matter of these contracts. The fact that the amount of the rentals for the five-year period may have been in part based on the peanut allotments of the particular year does not invalidate the lease or relieve the parties from their obligations thereunder. Accordingly, the case is reversed and remanded for determination of the liabilities of the parties under the lease agreements as raised by appellants'

counterclaims.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 22, 1983 —
REHEARING DENIED MARCH 9, 1983 — 

*Adie N. Durden, Jr., Charles W. Hill,* for appellants.
*Jesse G. Bowles III, Harold H. Hobbs,* for appellees.