A09A0304. COREY v. CLEAR CHANNEL OUTDOOR, INC.
A09A0305. SMITH-McIVER v. CLEAR CHANNEL
OUTDOOR, INC.
A09A0306. U. S. MEDIA, INC. v. CLEAR CHANNEL
OUTDOOR, INC.
(683 SE2d 27)

BARNES, Judge.

The three appellants in these appeals were defendants in a suit brought by Clear Channel Outdoor, Inc., a billboard company that purchased the assets of defendant U. S. Media in 1998 for approximately $44 million. Clear Channel alleged that the defendants violated a noncompete clause in the sales agreement, and the jury agreed, awarding the company almost $4.9 million in damages, attorney fees and pre-judgment interest. The trial court denied the defendants' motion for a judgment notwithstanding the verdict or new trial. On appeal, Corey contends the trial court erred in dismissing his counterclaim, and all three appellants argue they should have been allowed to present evidence regarding Clear Channel's original motive for suing them and that the trial court should not have allowed the jury to consider Clear Channel's claim for pre-judgment interest. McIver also contends the court erred in sanctioning her. For the reasons that follow, we affirm.

On appeal of a verdict and the trial court's denial of a motion for new trial, this court must affirm the judgment if any evidence supports it, as the jurors are the sole and exclusive judges of the weight and credit to be given the evidence. *Dumas & Assoc. v. Nalecz*, 249 Ga. App. 662 (549 SE2d 730) (2001). We "must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict." *MARTA v. Green Intl.*, 235 Ga. App. 419, 420 (1) (509 SE2d 674) (1998).

So construed, the evidence at trial showed that in December 1997, Clear Channel entered into a purchase agreement to buy the billboard assets of Corey Media, Inc., owned by William Corey, for $43.74 million. The agreement included a noncompete clause prohibiting Corey from "directly or indirectly" competing with Clear Channel in the billboard business in metro Atlanta for two years and also prohibited Corey from interfering with Clear Channel's outdoor advertising properties for five years. The clause provided that Corey would take reasonable steps to prevent its affiliates from competing "but not including, in their individual capacities, the employees, officers or directors" of Corey's companies. The contract assigned the sum of $2 million to be paid to Corey in exchange for not competing. Corey testified that he did not tell any of his employees about the clause, which he did not read because he was not planning

to build any more billboards.

Defendant Diane Smith-McIver ("McIver") admitted that, shortly before the sale to Clear Channel was completed in March 1998, Corey's in-house counsel formed a new company called U. S. Media. McIver was the new company's titular owner, but a forensic accountant who reconstructed U. S. Media's general ledger testified she did not actually own or run the company.[1] The accountant testified that Corey funded U. S. Media from the proceeds of his sale to Clear Channel and ran the business from Corey's offices using his long-time employees. Clear Channel argued that McIver's ownership was only a ruse, and that Corey continued operating his billboard business through U. S. Media, which bought nine more Atlanta area billboards in the next two years worth approximately $1.5 million.

McIver transferred U. S. Media to Corey in January 2001 for a net gain of $25,000, although, according to the testimony of Clear Channel's forensic accountant, U. S. Media's fair market value at that time was $3.29 million. Corey later sold part of U. S. Media's assets in 2004 for $8.3 million.[2]

In late 2002, Corey's company Corey Airport Services submitted an unsuccessful bid for the advertising concession at the Atlanta airport, which Clear Channel had held for many years. After Clear Channel was awarded the contract, Corey filed a protest with the city. Clear Channel alleged that the advertising displays inside the airport were "outdoor advertising" covered by the noncompete clause and advised Corey to drop his bid protest or be sued.

Corey did not drop his bid protest and Clear Channel sued him and Corey Airport Services in December 2002, alleging that Corey breached the noncompete clause of the asset sales contract by interfering with Clear Channel's airport advertising operation. Corey and his company denied that the airport signage constituted "outdoor advertising" or that the agreement applied to the airport bid. Clear Channel then amended its complaint, dropping all allegations regarding the airport bid, and sued Corey and U. S. Media for fraud and breach of the noncompete clause. Clear Channel added McIver as a defendant, alleging that McIver, U. S. Media, and Corey conspired to commit fraud, and also sought attorney fees against all three defendants. Corey counterclaimed, contending that Clear Channel breached the contract's noncompete clause and its implied duty of good faith and fair dealing by suing him, but the trial court

---

[1] U. S. Media's general ledger was lost when the company's computer crashed.

[2] The trial transcript contains no list of exhibits showing when they were tendered and admitted, and deposition excerpts read into the record were also not transcribed. Although the excerpts were included in the exhibits with handwritten notes showing what was read and what was not, appellate review would be much easier if the testimony read during the trial had been transcribed by the court reporter and included in the transcript.

granted Clear Channel's motion to dismiss the counterclaim, finding that Clear Channel did not breach the contract and that its motive in filing suit was irrelevant to whether the defendants breached the contract or committed fraud. The defendants raised the same claims in their proposed pre-trial order, and the trial court granted Clear Channel's motion in limine, ruling that evidence regarding Clear Channel's motive in filing suit was inadmissible.

The first trial resulted in a mistrial on the second day of testimony after McIver mentioned the airport dispute, and the trial court subsequently granted Clear Channel's motion for attorney fees and costs against McIver for $70,859. After the close of evidence during the second trial, the defendants moved for a directed verdict, arguing among other things that Clear Channel was not entitled to seek pre-judgment interest because it had not requested it in its pleadings or in the joint pre-trial order. The trial court denied the motion, and the jury awarded Clear Channel $2 million in damages, pre-judgment interest at seven percent from March 1998, and expenses of litigation. Before the second phase of the trial establishing Clear Channel's attorney fees, the trial court denied the defendants' motion to introduce evidence regarding the airport issue. After hearing evidence, the jury awarded $1.513 million in fees and costs. The trial court entered judgment for $2 million in damages, $1.38 million in pre-judgment interest, and $1.513 million in attorney fees.

1. Corey contends the trial court erred in dismissing his counterclaim, in which he alleged that the noncompete clause released him from any liability for McIver's individual competitive actions and that Clear Channel violated the clause by suing him for McIver's actions "to advance certain anti-competitive objectives in [other] business ventures," and "by holding Corey up to the Atlanta business community as unreliable and untrustworthy." Corey also alleged that Clear Channel violated its contractual duty of good faith and fair dealing by its actions.

In granting Clear Channel's motion to dismiss the counterclaim for failure to state a claim, the trial court held that the noncompete clause placed no duty on Clear Channel other than to pay Corey $2 million, which it did. Further, Corey had no standing to complain that Clear Channel breached its agreement to exclude other individuals from the noncompete clause.

Corey argued at trial that he did not violate the contract's noncompete clause, and on appeal, he argues that he should have been able to show that Clear Channel's motive for suing him was to stop him from trying to obtain the airport advertising concession. Clear Channel responds that the trial court properly held that its motives for filing suit were irrelevant to the issue of whether or not

Corey violated the agreement's noncompete clause.

(a) A motion to dismiss a counterclaim for failure to state a claim may be granted only if the movant shows that the counterclaimant could not possibly introduce evidence sufficient to sustain a grant of the relief requested. *Willis v. Dept. of Revenue*, 255 Ga. 649, 650 (1) (340 SE2d 591) (1986); *Grant v. Fourth Nat. Bank &c.*, 229 Ga. 855, 859 (1) (194 SE2d 913) (1972) (rules of pleading for counterclaim same as original claim). The claim need only set forth a claim for relief, *Koehler v. Massell*, 229 Ga. 359, 361 (1) (191 SE2d 830) (1972), and our review of a trial court's dismissal is de novo. *Rinaldi v. Willison*, 289 Ga. App. 87 (656 SE2d 231) (2008).

(b) Here, Corey alleged in his counterclaim that his asset purchase agreement and noncompete clause created an implied duty on Clear Channel's behalf not to sue him. In this State,

> [t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. [Cit.]

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

In this case, the question is whether Corey could have introduced any evidence supporting his claim that the parties' contract created an implied duty which Clear Channel violated by filing suit against Corey. "An implied term in an agreement exists where it is reasonable and necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state." *Fisher v. Toombs County Nursing Home*, 223 Ga. App. 842, 845 (479 SE2d 180) (1996). " '(W)hatever may be fairly implied by the terms of the agreement is in the eyes of the law embodied in the agreement. One who undertakes to accom-

plish a certain result agrees by implication to do everything to accomplish the result intended by the parties.' [Cit.]" *Regional Pacesetters v. Eckerd Drugs of Ga.*, 183 Ga. App. 196, 197 (358 SE2d 481) (1987).

We have found, for example, an implied duty to mine within a mineral lease that makes rent contingent on royalties, because otherwise the lessor would receive no benefit from the contract. *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 150 (1) (304 SE2d 365) (1983). A nursing home contract signed by the wife of the patient created an implied duty on the home to give the wife notice of the patient's discharge. *Fisher v. Toombs County Nursing Home*, supra, 223 Ga. App. at 845. An attorney-client contract implies the attorney's duty to convey settlement offers to the client. *Townsend v. Lipman*, 277 Ga. App. 326, 327-328 (1) (626 SE2d 538) (2006). On the other hand, a sublease did not create an implied duty on the sublessor to extend the master lease's option to renew. *Regional Pacesetters v. Eckerd Drugs of Ga.*, supra.

Here, the result to be accomplished by the noncompete agreement was an exchange of payment for Corey's promise not to compete.

> When a person sells a business and covenants not to compete in a certain territory, the buyer pays and the seller receives a part of the total purchase price as consideration for that covenant. The . . . purchaser's interest in what he has acquired cannot be effectively realized unless the seller agrees not to act so as to diminish the value of what has been sold.

*Hudgins v. Amerimax Fabricated Products*, 250 Ga. App. 283, 286 (1) (551 SE2d 393) (2001). The contract creates no implied duty on Clear Channel's part to refrain from suing Corey; if the company sued Corey without any basis, Corey's remedy would be an action for abusive litigation under OCGA § 51-7-81. The Code defines abusive litigation as "tak[ing] an active part in the initiation, continuation, or procurement of civil proceedings against another . . . [w]ith malice . . . and . . . [w]ithout substantial justification." In this case, Corey never argues he did not violate the noncompete agreement, that the evidence against him was insufficient, or that the contract was unenforceable. His argument that Clear Channel should not have sued him is the essence of an abusive litigation claim, see *Slone v. Myers*, 288 Ga. App. 8, 11 (2) (653 SE2d 323) (2007), which requires both written notice of an intention to assert the claim if litigation is not discontinued and "the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought

within one year of the date of final termination." OCGA § 51-7-84 (b). Until this appeal is concluded, any such claim could not be ripe. See *Wilson v. Hinely*, 259 Ga. App. 615 (578 SE2d 254) (2003).

Thus, the trial court did not err in dismissing Corey's counterclaim.

2. The three defendants contend the trial court erred in granting Clear Channel's motion in limine, thereby preventing them from discussing the company's alleged motive for filing suit, which they contend was to falsely accuse Corey of violating the contract to bring pressure to bear on him to drop his airport bid. The defendants raised these claims in their proposed pre-trial order and Clear Channel moved in limine to bar any evidence relating to motive. The court granted the motion in limine, ruling that Clear Channel's ulterior motive in filing suit was not relevant to the issues involved in establishing its cause of action. "The issues are whether or not the defendants, singly or jointly, breached the agreement at issue and whether any of them committed fraud or conspired to do so. Any alleged motive for bringing these claims, even if true, would not impact on these issues . . . [and] is not relevant."

Absent an abuse of judicial discretion, this court will not interfere with a trial court's decisions on whether evidence is relevant. *MacNerland v. Johnson*, 137 Ga. App. 541, 542 (1) (224 SE2d 431) (1976). "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant." (Punctuation omitted.) *Allen v. State*, 137 Ga. App. 755, 756 (224 SE2d 834) (1976). "[T]he reason a plaintiff sues a particular defendant is not relevant to any of the issues involved in establishing the plaintiff's cause of action." (Emphasis omitted.) *Jackson v. Dunkin' Donuts*, 211 Ga. App. 598, 599 (440 SE2d 56) (1993). In discussing whether evidence regarding a telephone call was admissible to explain the plaintiff's conduct in filing suit, we held that if "the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial), then the information, etc., on which he or she acted shall not be admissible under OCGA § 24-3-2." (Citation and punctuation omitted.) *A Child's World v. Lane*, 171 Ga. App. 438, 442 (4) (319 SE2d 898) (1984).

Of course, this holding does not mean that a trial court abuses its discretion in admitting evidence of motive regarding any fact. For example, in *Dave Lucas Co. v. Lewis*, 293 Ga. App. 288 (666 SE2d 576) (2008), citing *Cook Farms v. Bostick*, 165 Ga. App. 692, 694 (3) (302 SE2d 574) (1983), we affirmed the trial court's admission of letters that the plaintiff's attorney sent to the defendant attempting to get him to respond to the construction problem that formed the

basis of the suit. In *Cook v. Partain*, 224 Ga. App. 251, 252 (1) (480 SE2d 279) (1997), we affirmed a trial court's admission of evidence regarding the plaintiff's four prior lawsuits, which rebutted her claims of psychological damages. In *Williamson v. Lang*, 250 Ga. App. 228, 231 (1) (b) (550 SE2d 456) (2001), we affirmed the admission of evidence regarding a delay in filing suit that tended to show which of two contract formulas was more likely to be the terms of the contract at issue.

In all of these cases, this court held that the trial court did not abuse its discretion. They are all factually distinguishable, and in each case, motive evidence related to a particular issue in dispute. Evidence Clear Channel previously sued Corey over the airport contract does not bear directly or indirectly on whether Corey breached the noncompete clause in other ways.

The defendants contend that Clear Channel made admissions in judicio regarding the airport dispute, which were admissible as evidence of its motive in filing suit. While facts alleged in a complaint are constructive admissions in favor of the defendant, *Reynolds v. Estate of Reynolds*, 238 Ga. 1, 3 (1) (230 SE2d 842) (1976), "Georgia law requires that, to be admissible, evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded." (Citation and punctuation omitted.) *American Southern Ins. Group v. Goldstein*, 291 Ga. App. 1, 9 (4) (660 SE2d 810) (2008). In this case, a close reading of Clear Channel's initial complaint confirms that it alleges no "facts" supporting the defendant's contention that the company "admitted its intent to use the Non-Compete to block the Corey Airport bid." The complaint alleges that Corey violated the terms of the noncompete clause by seeking the airport concession, not that Clear Channel sued Corey to gain leverage over him or to sully his reputation.

The defendants also claim the trial court erred in excluding evidence of Clear Channel's motivations in filing suit, which they wanted to introduce to rebut Clear Channel's claim for attorney fees, because that evidence explained why the defendants fought so long against the claim. OCGA § 13-6-11. While a defendant may defend against a claim for attorney fees which alleges stubborn litigiousness by showing that it was the plaintiff rather than the defendant who was stubbornly litigious, the bad faith must arise from the underlying transaction at issue and the stubborn litigiousness must involve the matter in litigation. *Ryle v. Sliz*, 162 Ga. App. 868, 869 (2) (293 SE2d 451) (1982). The dispute over airport advertising is neither the underlying transaction nor the matter in litigation, and therefore evidence about it is not relevant to the issues at hand.

Because Clear Channel's motive for filing suit is not relevant to

whether Corey breached the noncompete clause, whether McIver and U. S. Media assisted him in doing so, or whether Clear Channel was entitled to attorney fees, the trial court did not abuse its discretion in granting Clear Channel's motion in limine to exclude evidence of its motive in filing suit.

3. The defendants also assert the trial court erred by denying their motion for a directed verdict and for judgment notwithstanding the verdict on Clear Channel's pre-judgment interest claim, despite Clear Channel's failure to ask for it in the company's complaint. The company responds that it requested the pattern charge on pre-judgment interest before the first trial, giving the defendants ample notice of the claim under OCGA § 13-6-13. It also moved for leave to file a special verdict form which included pre-judgment interest, a copy of which was included in its proposed pre-trial order, and moved for leave to file an additional jury charge regarding pre-judgment interest. Clear Channel contends that the defendants had notice of the claim and waived any objection to it by failing to object until after the second trial.

"Under the Civil Practice Act, amendments after the pre-trial order are to be liberally granted by the court as justice requires." *Midtown Properties v. George F. Richardson, Inc.*, 139 Ga. App. 182, 187 (6) (228 SE2d 303) (1976). "Not only is the right of amendment very broad, but so is the court's discretion in this regard, and its determination will not be disturbed absent abuse." *Henderson v. Easters*, 178 Ga. App. 867, 870 (2) (345 SE2d 42) (1986). "[T]he test of implied amendment of pleadings should always be whether the opposing party had a fair opportunity to defend, offer evidence or was misled." *Carreras v. Austell Box Bd. Corp.*, 154 Ga. App. 135, 138 (2) (267 SE2d 792) (1980). Here, the defendants had a fair opportunity to defend against the pre-judgment interest claim, of which they were aware from Clear Channel's previously submitted charge and special verdict form.

Further, the record reveals that the trial court charged the jury regarding pre-judgment interest after it charged on breach of contract, again after it charged on fraud, and a third time after it charged on contract rescission. While the defendants moved for a directed verdict on the pre-judgment interest issue after the jury retired to deliberate, the trial transcript establishes that they never objected to the court's charges to the jury regarding pre-judgment interest. Accordingly, the timing of objections to the charge as set forth in OCGA § 5-5-24 (a) is not an issue in this case. Further, "[t]he record in this case simply presents no ground for review of the substance of the charge[s]." *Hurst v. J.P. Colley Contractors, Inc.*, 167 Ga. App. 56, 58 (2) (306 SE2d 54) (1983).

In light of these facts, the trial court did not err in denying the

defendants' motion for a directed verdict or judgment notwithstanding the verdict on the issue of pre-judgment interest. *Holloway v. State Farm Fire &c. Co.*, 245 Ga. App. 319, 320 (1) (a) (537 SE2d 121) (2000).

4. Appellant Smith-McIver contends the trial court abused its discretion in sanctioning her when she "merely referenced the Atlanta airport" during her cross-examination. On cross-examination during Clear Channel's case-in-chief, McIver was asked about her prior deposition, when counsel questioned her about evidence and documents related to loans between her and Corey. McIver answered, nonresponsively, "Well, when I was brought into the case after the airport thing was dropped, I don't know. . . ."

In its discussion of why it was going to declare a mistrial, the trial court noted that McIver's response was a "blatant disregard" of its repeated instructions and ruling not to "get into the airport issue, the airport controversy, and all the turmoil about that." The court observed that McIver's "entire conduct during this proceeding has been nonresponsive at the least. She has continuously obfuscated, demurred, done all kinds of little games that given her standing in this business . . . her testimony on the stand has been . . . disingenuous I guess is the best way to put it." The court directed the plaintiffs to submit a bill of costs for trial preparation. Following a hearing on Clear Channel's subsequent motion for fees and costs under OCGA § 9-15-14 (b), the trial court held:

> Under the circumstances of this case, particularly in light of the repeated holdings and directives by the court stressing that nothing about the plaintiff's motive for filing suit, i.e., nothing having to do with the prior airport advertising business, be mentioned to the jury, the court finds that defendant [McIver's] gratuitous and inexcusable comments regarding this issue were made in flagrant violation of the court's orders above mentioned, and that her improper conduct has unnecessarily expanded this proceeding in that a mistrial had to be declared.

The court awarded $70,859 to Clear Channel against McIver.

OCGA § 9-15-14 (b) allows the trial court to impose fees and costs if it finds that an attorney or party "unnecessarily expanded the proceeding by other improper conduct." The decision whether to grant a mistrial because a witness mentions improper evidence is left to the trial court's sound discretion, which we review only for abuse considering the nature of the statement, the other evidence introduced during the trial, and the action taken by the court and counsel concerning the impropriety. *Culliver v. State*, 247 Ga. App. 877, 880

(3) (545 SE2d 392) (2001).

In this case, the trial court's decision to grant a mistrial and impose fees against McIver was based in part upon its observation of McIver throughout this litigation. "This Court will not second guess the trial court which heard testimony from this witness . . . and was in a position to evaluate the demeanor of the witness." *Varnadoe v. State*, 227 Ga. App. 663, 666 (4) (490 SE2d 517) (1997) (affirming denial of motion for new trial in criminal case alleging perjury and prosecutorial misconduct).

The trial court held a hearing and explained the basis for its ruling, and we cannot say that it abused its discretion.

*Judgment affirmed. Adams, J., concurs. Miller, C. J., concurs in judgment only.*

DECIDED JULY 14, 2009 —
RECONSIDERATION DENIED JULY 31, 2009

*Fisher & Phillips, Mairen C. Kelly, Matthew R. Simpson, Griffin B. Bell, Jr., Balch & Bingham, Michael J. Bowers, J. Matthew Maguire, Jr., Hasty Pope, Marion T. Pope*, for appellants.

*King & Spalding, John W. Harbin, W. Ray Persons, Bryan, Cave, Powell & Goldstein, Damon J. Whitaker, John T. Marshall, Eric P. Schroeder, William V. Custer IV*, for appellee.