A10A0810. JONES v. FOREST LAKE VILLAGE HOMEOWNERS
ASSOCIATION, INC. et al.
(696 SE2d 453)

BLACKBURN, Judge.

This is a class action in which homeowners in the Forest Lake Village subdivision sued Andrew R. Jones, the owner of a private, well-based water system that has served the subdivision since its development in 1973. A jury found in favor of the class and, based on that verdict, the trial court entered an order declaring that the subdivision's restrictive covenants did not require the homeowners to remain connected to Jones's private water system; permanently enjoining Jones from billing the class members and/or attempting to collect from them a monthly connection fee; and awarding the Forest Lake Village Homeowners Association $7,500 in attorney fees. Jones now appeals from the denial of his motion for a new trial or, in the alternative, a judgment notwithstanding the verdict ("j.n.o.v."). He asserts that the trial court erred: (i) by failing to comply with certain

---

[32] *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 799 (5) (449 SE2d 128) (1994).

statutory requirements in providing notice of the action to potential class members, in certifying the class, and in entering the order of final judgment; (ii) in allowing class members to testify as to the quality of both the service and the product provided by Jones's water system; (iii) in failing to sua sponte charge the jury on the effect of a partial failure of consideration for a contract; (iv) in submitting the claim for attorney fees to the jury and in denying his motion for a j.n.o.v. as to the award of attorney fees; and (v) in denying his motion for a new trial or, in the alternative, a j.n.o.v. Discerning no error in the trial court's admission of evidence or its instructions to the jury, and finding that the evidence supported the jury's verdict, we affirm the trial court's order denying Jones's motion for a new trial or, in the alternative, a j.n.o.v. We further find, however, that the final order of judgment entered below failed to comply with OCGA § 9-11-23 (c) (3)'s requirement that it contain a description of those individuals included in the class (and therefore bound by the order of judgment). Accordingly, we vacate the order of judgment and remand the case for entry of an order that contains a description of the class members, as identified in the order naming the class.

> On appeal of a verdict and the trial court's denial of a motion for new trial, this court must affirm the judgment if any evidence supports it, as the jurors are the sole and exclusive judges of the weight and credit to be given the evidence. We must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict.

(Citation and punctuation omitted.) *Corey v. Clear Channel Outdoor.*[1]

So viewed, the record shows that Forest Lake Village is a subdivision located on Lake Sinclair in Putnam County. The subdivision's restrictive covenants, which were drafted at the time of its development, provide in part that "[a]ll residences shall be connected to the central water system when it becomes available." Between approximately 1973 and 2005, water service in the subdivision was available only through a private water system, which was originally owned by the developer. Residences that connected to this private water system did so pursuant to a standard "Water Service Agreement," which provided:

> Company [owner of the water system] covenants and agrees that so long as water is available from existing water wells

---

[1] *Corey v. Clear Channel Outdoor*, 299 Ga. App. 487 (683 SE2d 27) (2009).

serving said water system, and to the extent said water is available, it shall furnish water under adequate pressure and in an adequate amount for domestic consumption to the aforesaid property of the Consumer, and to continuously furnish the same *unless and until* the operation of said water system is taken over or *an adequate supply of water is otherwise made available to the property of Consumer by any municipality or other government agency or authority or public utility. . . .*

(Emphasis supplied.)

In 1993, Jones purchased the water system from the developer. As part of that transaction, Jones received an assignment of the individual water service agreements between the developer and each of the homeowners. Additionally, to be able to obtain a license to operate the water system, Jones was required to enter into a Trust Indenture Agreement which was to remain in effect

*until* either (a) the [water] system [was] taken over by either a governmental authority or public utility for maintenance and operation; or (b) *other adequate [water] service is provided by either a governmental authority or public utility through means other than the operation of the [current] utility and facilities. . . .*

(Emphasis supplied.)

In 2004, Putnam County began construction of a water line that could serve the subdivision and it began advertising this service. In anticipation of the county service becoming available, Jones sent a letter to all of the homeowners indicating his belief that they had the option of disconnecting from his water system in favor of the county water system. Specifically, Jones's letter offered the homeowners financial incentives to remain connected to his private water system and stated, "[t]his offer is not available to anyone who elects to connect to the county [water] system."

After the county water system became available in 2005, the overwhelming majority of homeowners disconnected from Jones's private water system. Several of these homeowners testified at trial that their decision to connect to the county water system was the result of the poor service and the inferior quality of the water provided by the Jones system. Specifically, those homeowners testified that there were frequent water outages — i.e., often the wells servicing the private water system ran dry and the residents would then be without running water for one to several days. These witnesses also testified about the poor quality of the water, explain-

ing that it often had a foul odor; that at times it smelled of bleach; that it contained sand, sediment and rust; that sometimes when light-colored clothes were washed, the water actually stained them; and that the private water system necessitated the installation of water filters in their homes, with those filters needing to be replaced frequently.

Jones continued to bill those homeowners who had disconnected from his water system a monthly connection fee, claiming that the subdivision's restrictive covenants required every homeowner to remain connected to the private water system, regardless of whether they were actually using that system for their water service. The Forest Lake Village Homeowners Association and individual homeowners Milton and Rosemarie Sakey and Jerry and Sheila Cooper then filed the current action, seeking: (i) a declaration that the restrictive covenants did not require every homeowner to remain connected to the private water system; (ii) an injunction barring Jones from billing or attempting to collect a monthly connection fee from homeowners who had transferred their water service to the county system; and (iii) an award of attorney fees pursuant to OCGA § 13-6-11.

The plaintiffs moved for class certification, with the proposed class to include all those subdivision homeowners who had disconnected from the private water system. The trial court granted that motion, finding that the individual plaintiffs were suitable class representatives and ordering them to provide the trial court with a proposed notice to all potential class members. The trial court subsequently approved a notice of the proposed class action that was provided to all potential class members, with three of those approximately 161 potential members opting out of the litigation. Based on these responses to the notice, the class representatives moved for an order naming the class members, which the trial court granted, naming as class members "those owners of property in Forest Lake Village who have terminated their water service with [Jones] less the three individuals who have opted out. . . ."

The case proceeded to trial and at the close of all evidence, Jones moved for a directed verdict in his favor. The trial court denied that motion and the case was submitted to the jury on special interrogatories. In response to those interrogatories, the jury found: (i) that the restrictive covenants did not require subdivision homeowners to remain connected to the private water system; (ii) that the term "the central water system," as used in the restrictive covenants, referred to any central water system, not just the private water system; (iii) that Jones had no contract with any of the homeowners that obligated them to make any type of minimum monthly payment to him once they disconnected from his private water system; (iv) that

Jones had been stubbornly litigious or had cost the class members unnecessary trouble and expense; and (v) that the class was entitled to attorney fees in the amount of $7,500. The trial court entered judgment on the jury's verdict, permanently enjoining Jones from billing the class members and/or attempting to collect from them any type of fee and awarding the homeowners' association $7,500 in attorney fees. Jones then filed a motion for a new trial or, in the alternative, a j.n.o.v. The trial court denied that motion, and this appeal followed.

1. Jones first argues that the trial court committed reversible error because: (a) it failed to comply with the class notice requirements found in OCGA § 9-11-23 (c) (2); (b) the order certifying the class failed to set forth the findings of fact and conclusions of law required by OCGA § 9-11-23 (f) (3); and (c) the final order of judgment failed to include a description of those individuals included in the class, as required by OCGA § 9-11-23 (c) (3).

(a) OCGA § 9-11-23 (c) (2) requires that, in an action maintained under subsection (b) (3) of that statute, notice to potential class members must contain certain information.[2] Specifically, the notice must inform the potential class members that unless they request exclusion, they will be included in the class and bound by any judgment entered in the action, and that any member who does not request exclusion may enter an appearance through counsel. See OCGA § 9-11-23 (c) (2) (A), (B), (C).

Jones argues that reversible error occurred because the notice given to potential class members in this case did not contain the information required by subsection (c) (2). What Jones's argument fails to acknowledge, however, is that the class below was not certified pursuant to OCGA § 9-11-23 (b) (3). Rather, the trial court's order certifying the class shows that it found class certification appropriate under subsection (b) (2) of the statute, which provides:

> An action may be maintained as a class action if the prerequisites of subsection (a) of this Code section are satisfied, and, in addition: . . . (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

---

[2] Class certification under subsection (b) (3) is appropriate where "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." OCGA § 9-11-23 (b) (3).

injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Thus, the notice to potential class members in this case was not subject to the requirements of OCGA § 9-11-23 (c) (2), and the trial court did not err in failing to ensure that the notice included the information specified in that subsection.

(b) OCGA § 9-11-23 (f) (3) requires that, when certifying a class, the trial court "shall enter a written order addressing whether the factors required by this Code section for certification of a class have been met and specifying the findings of fact and conclusions of law on which the court has based its decision with regard to whether each such factor has been established." Jones argues that the order of class certification entered below failed to comply with this statute because it did not contain the necessary factual findings and legal conclusions.

As a threshold matter, any challenge to the trial court's certification order is barred as untimely. Under OCGA § 9-11-23 (g), such an order may be challenged only by an appeal "filed within 30 days of the order certifying or refusing to certify the class." Thus, if Jones believed the order certifying the class was legally deficient, he had to file a separate appeal within 30 days after that order was entered; he could not wait until after entry of final judgment in the underlying case to raise such a challenge.

Moreover, Jones's claim of error is refuted by the record, which shows that the order of class certification does contain findings of fact and conclusions of law. And, the trial court's findings of fact support its legal conclusions that the case met the statutory requirements for class certification.

(c) OCGA § 9-11-23 (c) (3) provides, in relevant part, that "[t]he judgment in an action maintained as a class action under [subsection (b) (2)] of this Code section, . . . shall include and describe those whom the court finds to be members of the class." The order of final judgment entered below failed to comply with this requirement, because it did not describe the members of the class, as previously identified by the trial court in its order naming the class. On appeal, Jones argues that this is a nonamendable defect that voids the judgment obtained against him by the class. We disagree.

The cases cited by Jones in support of his argument are, in fact, irrelevant to this issue. See *Barnes v. City of Atlanta*;[3] *Prado-*

---

[3] *Barnes v. City of Atlanta*, 275 Ga. App. 385 (620 SE2d 846) (2005), rev'd in part, *Barnes v. City of Atlanta*, 281 Ga. 256 (637 SE2d 4) (2006).

*Steiman ex rel. Prado v. Bush.*[4] At best, those cases support the proposition that an order naming the class may not be amended after the entry of final judgment in a class action. Those cases do not, however, support the position that an order of final judgment may not be amended to include a description of previously identified class members. We therefore vacate the order of final judgment entered below, and remand the case for entry of an order that includes a description of the class members, as identified in the trial court's order naming the class.

2. Questions concerning the relevance — and therefore the admissibility — of specific evidence are generally committed to the sound discretion of the trial court "and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Punctuation omitted.) *Rogers v. State.*[5] See also *R. A. Siegel Co. v. Bowen.*[6] Here, Jones argues that the trial court abused its discretion in allowing several class members to testify about both the poor water service and the poor quality of water provided by Jones's water system. Specifically, Jones asserts that such testimony was irrelevant to the issues in the case and that its admission unduly prejudiced him. Jones's argument as to the evidence's lack of relevance, however, is not supported by the record.

As shown by the pleadings, the trial transcript, and the special interrogatories submitted to the jury, Jones asserted two theories of defense. First, Jones claimed that the restrictive covenants, standing alone, required all subdivision homeowners to remain connected to his water system and to pay Jones a monthly minimum connection fee, regardless of whether they were using that system for their household water. Alternatively, Jones asserted that the restrictive covenants, the water service agreements, the deeds conveying the property to the individual homeowners, and the conduct of the parties, taken together, established the existence of a contract between Jones and each of the individual homeowners. Jones further claimed that these individual contracts obligated every homeowner to remain connected to his water system and to pay Jones a monthly minimum connection fee.

To be valid, however, such individual contracts would need to be supported by mutual consideration. See OCGA § 13-3-1. In other words, if the restrictive covenants, standing alone, did not obligate the homeowners to remain connected to Jones's water system, then any other contract so obligating the homeowners would require some

---

[4] *Prado-Steiman ex rel. Prado v. Bush*, 221 F3d 1266 (11th Cir. 2000).

[5] *Rogers v. State*, 285 Ga. App. 568, 570 (2) (646 SE2d 751) (2007).

[6] *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 183 (3) (539 SE2d 873) (2000).

"consideration that was in addition to and separate from the consideration given for the [restrictive covenants]. Otherwise, the agreement [would] fail[ ] for lack of mutuality." (Citation and punctuation omitted.) *Lotus Property Dev. v. Greer*.[7] The question of whether Jones was delivering sufficient, potable water, therefore, was relevant to the issue of whether Jones had provided consideration for those contracts he was attempting to enforce and thus whether any such contracts were valid. See *J. G. T., Inc. v. Brunswick Corp*.[8] ("[w]henever one side relies upon a contract between the parties to the litigation, the other side has a right to show that the contract is void because of failure of consideration"). Moreover, despite Jones's assertions to the contrary, the testimony presented on this issue was sufficient to allow the jury to find that there had been a failure of consideration as to the entire class, as opposed to only those homeowners who testified. Specifically, that evidence established that the water outages and water quality issues were frequent, and that they affected the entire subdivision. Accordingly, the trial court did not abuse its discretion in admitting this evidence.

3. Jones next asserts that the trial court committed reversible error when it failed to instruct the jury that a partial failure of consideration "will not void a contract," but will instead only "support a claim for breach of contract." *Merritt v. Marlin Outdoor Advertising*.[9] See also OCGA § 13-3-46. The failure to charge on this principle of law, Jones argues, allowed the jury to erroneously conclude that because there were "periods" of "inadequate water service," the restrictive covenants were void for a failure of consideration. This argument is without merit.

There is no evidence that Jones either requested that the trial court charge on this principle of law or that he objected to the trial court's failure to give such a charge. "Unless the failure to give a charge is harmful as a matter of law to the extent that a gross miscarriage of justice is about to result, the absence of a written request [to charge] is a waiver of the right to complain on appeal. *Williams v. Kennedy*."[10] (Punctuation omitted.) *Mullinax v. Doughtie*.[11] See also *Krause v. Vance*[12] ("[w]here there has been no written request to charge, failure to give the charge is not error") (punctuation omitted).

---

[7] *Lotus Property Dev. v. Greer*, 278 Ga. App. 773, 776 (3) (630 SE2d 112) (2006) (physical precedent only).

[8] *J. G. T., Inc. v. Brunswick Corp.*, 119 Ga. App. 719 (2) (c) (168 SE2d 847) (1969).

[9] *Merritt v. Marlin Outdoor Advertising*, 298 Ga. App. 87, 90 (1) (679 SE2d 97) (2009).

[10] *Williams v. Kennedy*, 240 Ga. 163 (2) (240 SE2d 51) (1977).

[11] *Mullinax v. Doughtie*, 196 Ga. App. 747, 750 (7) (396 SE2d 919) (1990).

[12] *Krause v. Vance*, 207 Ga. App. 615, 621 (16) (428 SE2d 595) (1993).

Here, "we find no likelihood of a miscarriage of justice as a result of the trial court's failure to charge the jury on [a partial failure of consideration]." *Mullinax*, supra, 196 Ga. App. at 750 (7). In reaching this conclusion, we note that Jones's arguments on this issue are based on an erroneous premise. Specifically, Jones argues that the homeowners were claiming that the inadequate water service constituted a failure of consideration that voided the restrictive covenants' requirement that they remain connected to Jones's water system. Such inadequate water service, however, was not the basis for the homeowners' "failure of consideration" claim. Rather, the class members took the position that, even assuming that the restrictive covenants obligated them to remain connected to the private water system, that obligation had to be supported by the mutual obligation of the system's owner (originally the developer and now Jones) to provide water. In other words, even assuming that by entering into the restrictive covenant concerning "the central water system" the homeowners "waived and surrendered whatever . . . rights that they may have had" to connect to a different water system, they did so in consideration for the promise by the owner of the private water system to provide them with an adequate water supply. *Focus Entertainment Intl. v. Partridge Greene, Inc.*[13] Both the individual water service agreements and the Trust Indenture Agreement introduced into evidence at trial, however, clearly stated that Jones was obligated to provide the subdivision with water only until "an adequate supply of water is otherwise made available to the property of Consumer by any municipality or other government agency or authority or public utility." After the Putnam County water service came into existence, therefore, Jones was no longer contractually obligated to maintain his private water system.

In light of this fact, the class argued that once the county water system became available, there was a total failure of consideration for any provision in the restrictive covenants that would have otherwise required them to remain connected to Jones's water system. The evidence was sufficient to allow the jury to find such a total failure of consideration. Accordingly, any failure by the trial court to sua sponte instruct the jury on a partial failure of consideration did not result in a miscarriage of justice. *Mullinax*, supra, 196 Ga. App. at 750 (7).

4. OCGA § 13-6-11 allows a jury to award a plaintiff attorney fees if it finds that "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble

---

[13] *Focus Entertainment Intl. v. Partridge Greene, Inc.*, 253 Ga. App. 121, 125 (2) (558 SE2d 440) (2001) (physical precedent only).

and expense." The jury below found that Jones had been stubbornly litigious or had caused the class unnecessary trouble and expense, and awarded the class $7,500 in attorney fees. On appeal, Jones argues that the trial court erred in submitting the attorney fees claim to the jury and in subsequently denying his motion for a j.n.o.v. on the award of such fees.

Where, as here, bad faith is not an issue, "and the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense," an award of attorney fees will not be permitted if there is a "bona fide controversy" between the parties. *Daniel v. Smith.*[14] "It is for the jury to determine whether there was a bona fide controversy, unless the facts preclude such a finding as a matter of law." (Punctuation omitted.) Id. Jones argues that a bona fide controversy existed in this case, precluding the award of attorney fees, because the trial court submitted the case to the jury, rather than summarily adjudicating the contractual questions at issue. Jones, however, cites no legal authority that supports this proposition.

Moreover, Jones's argument ignores the plain language of OCGA § 13-6-11, which provides that *a jury* may allow an award of attorney fees if *the jury* finds that the defendant's conduct warrants such an award. The statute, therefore, contemplates that the facts in any given case may support an award of attorney fees, even if the case is resolved at trial, rather than by summary adjudication. We therefore decline to hold that a judge is barred from submitting the question of attorney fees to a jury, simply because the trial court has allowed a jury to decide other factual issues in the case. This is particularly true where, as in this case, the plaintiff never sought summary adjudication — i.e., the class never moved for either summary judgment or a directed verdict.

Finally, we note that the evidence here supports the jury's award of attorney fees. When he first learned of the fact that the county water system would be available to residents of the subdivision, Jones sent a letter indicating to all of the residents his belief that they had the option of using the county water system, and offering them a financial incentive to continue using his system. Jones adopted the position that he maintained in this litigation (that the residents were obligated to remain connected to his water system and pay him a minimum monthly connection fee) only after his efforts to keep those customers failed, and the vast majority of residents opted to go with the county system. The jury could rely on this evidence to find that Jones had been stubbornly litigious or had

---

[14] *Daniel v. Smith*, 266 Ga. App. 637, 638 (1) (597 SE2d 432) (2004).

caused the class unnecessary trouble and expense.

5. In support of his claim that the trial court erred in denying his motion for a new trial or, alternatively, a j.n.o.v., Jones argues that the jury failed to properly apply the law to the evidence presented. In essence, therefore, Jones argues that the jury did not interpret the facts as he believes it should have. This argument, however, presents no grounds that would allow us to find error by the trial court in refusing to overturn the jury's verdict.

While "[a] trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence[,]" an appellate court does not have such discretion. (Punctuation omitted.) *Davenport v. Yawn.*[15] Rather, when a trial court denies a new trial motion or a j.n.o.v., this Court

> can only review the [record] to determine if there is any evidence to support the verdict. The standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported.

(Punctuation omitted.) Id. See also *Dumas & Assoc. v. Nalecz*[16] ("[i]n the absence of legal error, an appellate court is without jurisdiction to interfere with a verdict supported by some evidence even where the verdict may be against the preponderance of the evidence") (punctuation omitted). Moreover, in conducting our review, we must view the evidence "in a light most favorable to the prevailing party with every presumption and inference [drawn] in favor of sustaining the verdict." (Punctuation omitted.) *Freese II, Inc. v. Moses.*[17]

Given that this case involved disputed factual issues, the trial court properly allowed the jury to resolve those issues. "And because there was some evidence supporting the jury's decision, the trial court did not err in denying [Jones's] motion for new trial [and his motion for a j.n.o.v.] on general grounds." *Dumas & Assoc.*, supra, 249 Ga. App. at 663.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and Bernes, J., concur.*

---

[15] *Davenport v. Yawn*, 297 Ga. App. 685, 688 (2) (678 SE2d 148) (2009).

[16] *Dumas & Assoc. v. Nalecz*, 249 Ga. App. 662, 663 (549 SE2d 730) (2001).

[17] *Freese II, Inc. v. Moses*, 301 Ga. App. 793, 794 (689 SE2d 98) (2009).

DECIDED JUNE 18, 2010 — 

*David G. Kopp*, for appellant.
*Adams & Ford, Francis N. Ford*, for appellees.